GEORGIA R. & BANKING CO. v. WRIGHT, Comptroller General.

(District Court, N. D. Georgia. November 11, 1916.)

TAXATION ⚖︎278—SITUS OF PROPERTY—SHARES IN FOREIGN CORPORATION.

A Georgia railroad corporation leased all of its property for 99 years, and also by said lease assigned to the lessee "all the right of ownership, management, and use * * * which the party of the first part now has or is entitled to" in a railroad in Alabama of which it was a part owner. Such road was afterward incorporated in Alabama, and the lessor's interest was represented by stock issued in its name. The effect of the lease was to give the lessee the right to the use and income of such stock during the term of the lease, with reversion to the lessor. While in such condition it was held taxable in Georgia as property of the lessor domiciled in that state. *Held*, that a further agreement by which the lessor transferred the shares to the lessee, a corporation of another state, in trust to be held during the remainder of the term of the lease for the benefit of itself and a colessee, and after that to be reassigned to the lessor, did not change the situs of the property for the purpose of taxation; the lessor still being the owner of the stock subject to the lease.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 454, 455; Dec. Dig. ⚖︎278.]

In Equity. Suit by the Georgia Railroad & Banking Company against William A. Wright, Comptroller General. Decree for defendant.

Cumming & Hull and Jos. B. Cumming, all of Augusta, Ga., and Alex C. King, of Atlanta, Ga., for plaintiff.

Clifford W. Walker, Atty. Gen., B. E. Pierce, of Augusta, Ga., and George Westmoreland, of Atlanta, Ga., for defendant.

NEWMAN, District Judge. The question in this case is whether 15,000 shares of stock in the Western Railway of Alabama, which at the time of the lease to be hereinafter mentioned was the property of the plaintiff in this case, are, under the facts surrounding said stock, subject to taxation in Georgia; also whether $31,000 of bonds of the Monroe Railroad of Georgia, valued at $20,000, and $84,000 of bonds, valued at $25,000, and 200 shares of stock, said to be of no value, in the Union Point & White Plains Railroad Company, are subject to taxation against the plaintiff, the Georgia Railroad & Banking Company.

In 1881 the Georgia Railroad & Banking Company executed a lease for 99 years of its railroad and appurtenances to William M. Wadley, which lease, by successive transfers, subsequently came to the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, who now operate the Georgia Railroad as lessees. The power of the Georgia Railroad & Banking Company for making the lease to Wadley (who is succeeded in the lease, as stated, by the two railroad companies named) is shown by a provision of the original charter of that company, granted in 1833, as follows:

"That the said company may, when they see fit, rent or farm out all or any part of their exclusive right of transportation or conveyance of persons, on the railroad or railroads, with the privilege to any individual or individuals, or other company, and for such term as may be agreed upon."

In making the lease to Wadley the railroad company used the language of its charter as to the main body of the railroad and its appurtenances; that is, "hath rented and farmed out," etc. At the time of the making of the lease the Georgia Railroad & Banking Company and the Central Railroad of Georgia were the owners of the Western Railroad of Alabama, located in the state of Alabama, and that also went to Wadley under the lease. The language relating to that in the lease is:

"And the party of the first part [Georgia Railroad & Banking Company] also assigns by these presents to the party of the second part and his assigns all the right of ownership, management, control, and use of the Western Railroad of Alabama which the party of the first part now has or is entitled to: Provided, that when either branch of the Western Railroad of Alabama from Opelika into Georgia shall be sold, one-half of the proceeds of the sales shall be received by the party of the first part."

There is another provision in the lease to this effect:

"The party of the second part also covenants for himself and his assigns that he and they will pay the interest demandable of the party of the first part of the bonded debt of the Western Railroad of Alabama, so that said indebtedness shall never be increased, and at the termination for any cause of this agreement to return the property, which the party of the first part has in said railroad, without any greater incumbrance thereof than it now bears. But the party of the first part will consent to the organization of the owners of the Western Railroad of Alabama into a corporation, and to the issue by said corporation of bonds to renew bonds maturing from time to time, for which the said railroad of Alabama is liable, which said bonds the party of

the first part hereby agrees to indorse or guarantee to the same extent that it is now bound for the bonds of the Western Railroad of Alabama: Provided, that said incorporation shall not impair the beneficial ownership of said railroad by the party of the first part; and provided, further, that the aggregate amount of bonded indebtedness of said railroad and the rate of interest thereon shall not be increased to an amount and rate exceeding the present amount of bonds and present rate of interest."

Under the permission granted in this indenture, a corporation under the laws of the state of Alabama, styled the Western Railway of Alabama, was formed, to which the Western Railroad of Alabama was conveyed, and the interest of the Georgia Railroad & Banking Company was converted into a certificate for 15,000 shares of stock, out of a total of 30,000 shares; the other 15,000 shares going to the Central Railroad of Georgia. This certificate issued to the Georgia Railroad & Banking Company was sent to it at its office in Augusta, in this state, as I understand the record, and held by it until the making of a new agreement hereinafter referred to, in 1904. This stock, as it stood prior to 1904, has been held to be taxable in Georgia. Wright v. Louisville & N. R. Co., 195 U. S. 219, 25 Sup. Ct. 16, 49 L. Ed. 167. And in Central of Georgia Railroad Co. v. Wright, Comptroller General (C. C.) 166 Fed. 153, the question of the effect of a statute of Alabama of 1907, then and now before the court, was referred to in the opinion in this way:

"A recent statute of the state of Alabama of March 7, 1907 (Laws 1907, p. 455), is set out in the bill, and it is claimed that the situs of this Western Railway of Alabama stock is fixed by it for the purpose of taxation in Alabama. The act provides for the assessment at its actual market value of all shares of stock in corporations of Alabama to the persons in whose names the shares appear on the books of the corporation. It requires the president or chief officer of the corporation to make out and return, under oath, to the assessor of the county in which the corporation is located, a list showing the total number of shares of the capital stock and the par value thereof, and the name and residence of each shareholder. It then allows a reduction from the aggregate value of these shares of any corporation of the amount at which the real and personal property of the corporation is returned to the tax assessor for taxation, and provides for taxing the residue, if any. It further provides that the amount paid by the corporation for any shareholder as taxes shall be a lien on any interest the shareholder may have in any property owned by the corporation. If this act of the Legislature of Alabama has any effect at all, it goes to the question whether this stock is taxable at all in Georgia, and, if so, to what extent, in view of the provisions of this Alabama statute. What the schemes of taxation may be of the state in which the physical property of a corporation is located has no effect apparently upon the right of another state in which shares in a corporation are held to tax such shares. Kidd v. Alabama, 188 U. S. 730, 23 Sup. Ct. 401, 47 L. Ed. 669; Wright v. Louisville & Nashville Railway Company, 195 U. S. 219, 25 Sup. Ct. 16, 49 L. Ed. 167."

The Supreme Court of Georgia, in Georgia Railroad & Banking Co., v. Wright, Comptroller General, 124 Ga. 596, 53 S. E. 251, and also in Georgia Railroad & Banking Co. v. Wright, Comptroller General, 125 Ga. 589, 54 S. E. 52, had the question of the taxability of this stock before it and held the same to be taxable; various questions being involved not material here. And in Central of Georgia Railway Company v. Wright, Comptroller General, 124 Ga. 630, 53 S. E. 207, the question of the taxability of its half of these shares of stock in

the Western Railway of Alabama was also before the court, with a like result. These cases went to the Supreme Court of the United States (207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463) and the decisions of the Supreme Court of Georgia were reversed, but upon entirely different grounds; no holding whatever being made as to the taxability of these shares of stock, as I understand the cases. The extent to which this decision of the United States Supreme Court went is shown, I think, in the last paragraph of the opinion by Mr. Justice Day, as follows:

"Reluctant as we are to interfere with the enforcement of the tax laws of a state, we are constrained to the conclusion that this system does not afford that due process of law which adjudges upon notice and opportunity to be heard, which it was the intention of the Fourteenth Amendment to protect against impairment by state action."

I think it is thoroughly settled now that this stock was taxable in Georgia prior to 1904, and if its situs was then changed it was by reason of an agreement entered into in December, 1904, between the Georgia Railroad & Banking Company and the Louisville & Nashville Railroad Company, as follows:

"United States of America.

"This agreement entered into this ——— day of December, 1904, between the Georgia Railroad & Banking Company, a corporation created and existing under and by virtue of the laws of the state of Georgia, of the first part, hereinafter called the Banking Company, and Louisville & Nashville Railroad Company, a corporation created and existing under and by virtue of the laws of the state of Kentucky, hereinafter called the Railroad Company, witnesseth:

"That whereas, by an indenture dated the 7th day of May, 1881, between the Banking Company, as party of the first part, and William M. Wadley, of Monroe county, of the state of Georgia, of the second part, the said Banking Company among other things assigned, transferred, and conveyed to the said Wadley and his assigns for and during the term of ninety-nine years from the 1st day of April, 1881 "all the right of ownership, management, control, and use of the Western Railroad of Alabama which the party of the first part then had or was entitled to; and whereas, thereafter, the Western Railway of Alabama was incorporated and the interest of the party of the first part therein became represented by 15,000 shares of its capital stock of the par value of $100 per share, which said stock came under the terms of said lease; and whereas, by regular and legal assignment the Railroad Company and the Atlantic Coast Line Railroad Company have become the successors of the said William M. Wadley, and have acquired all of the rights and interests held by him under and by virtue of said lease, and said stock is now held by the Banking Company for the benefit of said lessees under the terms of said lease:

"Now therefore, in consideration of the premises and of the sum of ten ($10) dollars to the Banking Company by the Railroad Company well and truly paid at and before the execution of these presents, said Banking Company hereby transfers, assigns, and sets over to the Railroad Company said 15,000 shares of the capital stock of the Western Railway of Alabama to be held by said Louisville & Nashville Railroad Company in trust for itself and the Atlantic Coast Line Railroad Company, its colessee for and during the remainder of said lease, with the right in the Louisville & Nashville Railroad Company, as trustee as aforesaid, to the possession and custody thereof and to collect for itself and its colessee and use the dividends thereon, and at the expiration of said term the estate in said stock hereby conveyed, and all the rights, powers, interest, and possession of the said Railroad Company in said stock and its income are to terminate, and the said Railroad Company is to return said stock to the Banking Company or its assigns."

Then follows the execution clause.

237 F.—31

It is claimed here by counsel for the plaintiff, the Georgia Railroad & Banking Company, that this instrument vested the legal title to the 15,000 shares of stock in the Western Railway of Alabama, which then belonged to the Georgia Railroad & Banking Company, in the Louisville & Nashville Railroad Company, as trustee for itself and the Atlantic Coast Line Railroad Company, leaving only a reversionary interest in this stock in the Georgia Railroad & Banking Company. Did this writing have this effect? That is the principal question here.

As the stock stood, it was held under the lease of May 7, 1881, by the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, as lessees, for the remainder of the term of 99 years for which the lease provided. The effect of this instrument of December, 1904, was not to change the right to have and enjoy the income of this stock, during the remainder of the lease, to the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, and their assigns, but to change the right to hold it during that period from these companies themselves to the Louisville & Nashville Railroad Company, as trustee for itself and the Atlantic Coast Line Railroad Company, giving to the Louisville & Nashville Railroad Company, as trustee, the possession and custody thereof and the right to collect the dividends thereon.

I am unable to see how this changed in any way the legal status of this stock as to its situs for taxation, and that has been held, by all the decisions to which I have referred, at that time to have been in Georgia. It is understood that at the time this agreement of December, 1904 was made, the shares of stock in question here were held by the Georgia Railroad & Banking Company at its office in Augusta, Ga.

In speaking of this instrument of December, 1904, in their brief, counsel for the plaintiff says this:

"It is needless to inquire whether this instrument made any material change in the status of these shares. It did between the parties what the Wadley indenture called for as to these shares; or, if it did more, it did only what the parties had a right to do, and made the title to these shares exactly what the lease had done as to the ownership of the Western Railroad before the corporation was created. It turned these shares over to the parties, who were entitled to ownership and enjoyment of them for the term of the lease. It created an estate, or, if the estate already existed under the terms of the lease, it was the formal declaration of the estate—an estate for a long term of years with reversion to the grantor. It is immaterial, also, whether the trust was executed in the cestui que trust or not. Complainant contends that the trust is executory, for the reason that the trustee has a function to perform, viz. to retransfer the shares at the expiration of the estate for years. But this is immaterial. In either view complainant has no property or interest in these shares except the reversion. The owner of the estate for years does not reside in Georgia, and as the claim of the state to the arbitrary power to tax shares of stock of foreign corporations is based solely on the residence of their owner in the state, no law of the state authorizes the taxation of these shares."

If the certificate for these shares was transferred from Augusta, Ga., to Louisville, Ky., and was held by the Louisville & Nashville Railroad Company as trustee for itself and the Atlantic Coast Line Railroad Company, would that have any effect upon the fact that the

Georgia Railroad & Banking Company is still the owner of the shares? It seems to me it would have no effect whatever upon the legal situs of this stock for the purpose of taxation. This instrument of December, 1904, seems to carefully restrict the rights of the two railroad companies in this stock to what they had before the instrument was executed. Its only effect is to make the Louisville & Nashville Railroad Company the trustee for both the railroad companies.

The clause in the indenture of May 7, 1881, which authorizes the organization of the Western Railroad of Alabama into a corporation, had this proviso:

"Provided, that said incorporation shall not impair the beneficial ownership of said railroad by the party of the first part."

And so all through this original lease contract of 1881 it is everywhere shown that the purpose was simply to lease, or assign and transfer, if they are better terms, this interest in the Western Railroad of Alabama (which subsequently became represented by this stock in the Western Railway of Alabama) to the lessee for a term of years, with the ownership—that is, with the title—still in the lessor company, and with all rights that usually appertain to owners of leased premises reserved, and perhaps more than usual, and the right of visitation and examination of the property, and the right to have a forfeiture of the lease for noncompliance with its provisions.

The mere fiction of placing this stock in the hands of a trustee to hold for the purposes named in the original lease seems to me wholly ineffective, when considered in connection with the original lease and all of its terms, to change its ownership or title. Whether it created an executed or executory trust seems to me immaterial for present purposes. What it did was subordinate to, and must be considered in connection with, the original lease, and, so considered, it leaves the ownership of the stock in the Georgia Railroad & Banking Company, and the right to any profits or income from the stock, for the term of the lease, in the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company.

This record fails to disclose anywhere, so far as I have been able to see, taxes paid on these shares of stock anywhere else than in the state of Georgia. There is nothing to show that there are any taxes paid in Alabama, and nothing to show that there are any taxes paid in Kentucky. Tax has been paid on the reversionary interest in the shares in the state of Georgia, and such tax has heretofore been accepted as satisfactory by the comptroller general. This last fact has been urged as an argument against the right to tax these shares on their entire value here now, but I do not see that the fact that the comptroller general was of the opinion during preceding years that it was right to accept the tax simply on the reversionary interest returned by the Georgia Railroad & Banking Company is any reason why, if the state has the right to tax the entire value, it should not do so. Certain it is that, so far as this record shows, the tax on the reversionary interest is all that has been heretofore collected on these shares anywhere.

It is a question of some difficulty, but in my judgment the court would not be justified in interfering with the comptroller general in the collection of these taxes.

What has been said above with reference to the shares of stock in the Western Railway of Alabama is equally true of the $31,000 of bonds of the Monroe Railroad Company and the $84,000 of bonds of the Union Point & White Plains Railroad Company. These two are Georgia corporations, and it is alleged, and not denied, as I understand it, that the bonds referred to were transferred to the Louisville & Nashville Railroad Company on the same trusts as were the shares of the Western Railway of Alabama.

As to the 200 shares of stock in the Union Point & White Plains Railroad Company, the comptroller general in his answer disclaims any right or purpose to tax said stock or that it is subject to taxation.

A decree will be entered, dismissing the bill, with costs.