CENTRAL OF GEORGIA RY. v. GEORGIA R. R. COMMISSION.

(District Court, N. D. Georgia.   June 25, 1914.)

1. CARRIERS (§ 10*)—REGULATION—RATES—NOTICE AND HEARING—DUE PROCESS OF LAW.

Notice and hearing are necessary to the validity of an action by the Georgia Railroad Commission, changing a freight classification of a railroad company doing business within the state, so as to reduce its freight rates, under authority conferred by Georgia Railroad Commission Law (Acts 1879, p. 125) as amended by Acts 1907, p. 72.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 12, 14–20; Dec. Dig. § 10.*]

2. CARRIERS (§ 10*)—REGULATION—RAILROAD COMMISSION—REDUCTION OF RATES—NOTICE AND HEARING.

Civ. Code 1910, Ga. §§ 2630, 2633, 2641, and 2653, being part of the Railroad Commission Law, providing the method of procedure before the Railroad Commission in rate regulation proceedings, and declaring that the same shall be that ordinarily used and recognized in courts of law, does not provide for notice and hearing to a railroad company before the entry of an order by the Commission, changing freight classification so as to reduce intrastate freight rates.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 12, 14–20; Dec. Dig. § 10.*]

3. CONSTITUTIONAL LAW (§ 318*)—DUE PROCESS OF LAW—NOTICE.

Where no statute or rule required the State Railroad Commission to give notice and hearing of a proceeding to change intrastate freight classification so as to reduce intrastate rates, the fact that the Commission did give notice to complainant railroad company by a letter addressed to one of its officers as matter of grace, did not constitute due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. § 318.*]

4. CONSTITUTIONAL LAW (§ 318*)—DUE PROCESS OF LAW—NOTICE—RAILROAD COMMISSION—HEARINGS.

Notice to a railroad company of proceedings before the State Railroad Commission to change intrastate classification so as to reduce rates

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

given in pursuance of a rule of the Commission as distinguished from a statutory requirement is sufficient to constitute due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. § 318.*]

In Equity. Suit by the Central of Georgia Railway against the Georgia Railroad Commission. On application to refuse or deny an application for an injunction pendente lite. Granted.

J. K. Hines, of Atlanta, Ga., for Georgia R. R. Commission.
McDaniel & Black, of Atlanta, Ga., for Southern Ry. Co.
Lawton & Cunningham, of Savannah, Ga., for Central of Ga. Ry.
Robert C. & Philip H. Alston, of Atlanta, Ga., for Atlantic Coast Line Ry. Co.

Before PARDEE, Circuit Judge, and NEWMAN and FOSTER, District Judges.

PER CURIAM. This suit was commenced in the Circuit Court of this district February 19, 1906. Its object was to obtain an injunction against the Georgia Railroad Commission, preventing the putting in force of a certain order of the Commission (No. 316) changing the classification of the complainant, and thus reducing its freight rates, on the grounds that the said order was issued without due process of law and if enforced would be confiscatory. The complainant prayed for an injunction pendente lite, a restraining order pending notice thereon, and for a perpetual injunction. The restraining order was reasonably issued pending a rule to show cause why an injunction pendente lite should not issue, and thereafter various demurrers and answers were filed, followed by an amendment to the bill January 21, 1907, and thereafter, on a hearing had on the question of the issuance of an injunction pendente lite, evidence was taken and the case was fully argued and submitted. Pending consideration the court was in doubt as to a question existing as to whether it cost the railroad considerably more to do intrastate business than it did to do interstate business or its general business. It was claimed by the railroad company that, while it cost about 70 cents to earn a dollar in its general business, in its local or intrastate business the cost was 85 cents to earn $1; and the determination of this necessarily affected the question of confiscation which, on the evidence before the court, was a close question, whereupon the court referred the matter to a master. The master took the case, and the railroad company, within a short time, put in certain evidence which tended to show the correctness of its contention, and probably, in the absence of rebutting testimony, did show its contention to be true. The Railroad Commission failed to put in any evidence, and the case remained in the hands of the master awaiting evidence for some time, and until the master was appointed a judge of the superior court of the state, which necessarily discontinued his work in the case. After discussion between the court and counsel as to the course to pursue, the master returned the papers, and the evidence which had

been taken, to the court, and from that time for a period of about five years the case practically went to the dead docket. From evidence offered on this present hearing, it appears that, owing to the then prevailing bad condition of railroad business in Georgia and the difficulty attendant upon proof in the case, the Railroad Commission and the complainant tacitly, if not actually, agreed to the indefinite postponement, if not actual discontinuance, of the case. No other explanation is suggested as to why, with the restraining order in force, the case was allowed to sleep for five years. Recently, on the 6th day of February, counsel for the Railroad Commission moved for a dissolution of the restraining order, and, that motion being set down for trial, the judge, finding that the real question involved was upon the issuance of an injunction pendente lite, concluded that Act June 18, 1910, c. 309, § 17, 36 Stat. 557, now section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [U. S. Comp. St. Supp. 1911, p. 236]), as amended by Act March 4, 1913, c. 160, 37 Stat. 1013, was controlling as to the personnel of the court to hear the same. He thereupon set the motion down for hearing and called to his assistance one of the Circuit Judges and another District Judge. On the hearing before the court thus constituted, on February 27, 1914, at New Orleans, counsel for both sides being present, on motion of counsel for the Commission, the pending motion was changed from an application to dissolve the restraining order, entered in the case of 1906, to a motion to refuse or deny the application for an injunction pendente lite, and thereupon, after argument, further hearing was continued.

On this present hearing, we have the evidence taken contradictorily before the master in 1907, strongly tending to show that the reduction required under order 316 would have been confiscatory at the time the bill was filed, and a mass of ex parte evidence, such as affidavits, reports of the complainant and of the Commission, from 1907 down to 1914, showing that the business of the complainant, and of other railroads in Georgia, for recent years has been largely increasing, and tending to show the effect order 316 would have if put in operation in this year, 1914.

A very important question in this case, raised by complainant, is that of "due process of law." Complainant claims that circular 316, issued by the Railroad Commission of Georgia, was made and promulgated by the Commission at a time when the act creating the Commission did not provide, and no rule adopted by the Commission provided, for notice or a hearing upon the question of a change in rates to be charged by the railroads for service rendered in the hauling of passengers or freight. The only notice which the railroad company had of the hearing was a letter addressed by the secretary of the Commission to the freight agent of the complainant company, stating that a motion by Commissioner J. Pope Brown to change a classification would be heard at a certain time. The hearing, at the certain time, it is stated, was had before the Commission on this matter. The grave question made by the complainant is that this notice was a mere matter of grace or favor, and not notice required by law or by the rules of the Commission.

[1] There was some doubt, apparently, for some time as to whether it was necessary for railroad companies in this state to have notice of the action of the Railroad Commission, concerning the rates which they might charge. A case decided by the Supreme Court of Georgia February 13, 1912, Wadley Southern Railway Co. v. State, 137 Ga. 497, 73 S. E. 741, determined this question.

The act of the Legislature of Georgia, creating and conferring powers upon the Railroad Commission of Georgia, of 1879 (Acts 1879, p. 125), was amended by an act of the Legislature of 1907 (Acts of 1907, p. 72). With reference to that act and to a provision contained therein there has been much discussion here. The Supreme Court of Georgia, in the opinion in the Wadley Southern Railway Company Case by Mr. Justice Evans, on this subject says this:

"It is said that the statutes giving validity to the orders of the Railroad Commission, which is the basis of this suit, do not provide for notice and hearing, nor do the rules of the Commission so provide, and therefore due process of law is not afforded. The Commission Act of 1907 enlarged the powers of the Railroad Commission so as to give it jurisdiction and power over practically all public service corporations. In defining the jurisdiction the sixth section of the act (Civil Code 1910, § 2663) declares that the Railroad Commission shall have and exercise all power and authority heretofore conferred on it by law and shall have general supervision over railroads and other public service corporations. In the exercise of its powers, it was provided that it may proceed on its own initiative or on the complaints of others, and may require all common carriers and other public-service companies under their supervision to establish and maintain such public service and facilities as may be reasonable and just, either by general rules or by special orders in particular cases, 'provided that nothing in this section shall be so construed as to repeal or abrogate any existing law or rule of the Commission as to notice or hearings to persons, railroads or other corporations interested in their rates, orders, rules or regulations issued by said Commission before the same are issued, nor to repeal the law of this state as to notice by publication of a change in rates.' The most casual reader of this section cannot fail to be impressed that the legislative purpose was to afford parties affected by any order in a particular case an opportunity to be heard in advance of its promulgation by the Commission. While the literal application of the proviso concerns the preservation of existing statutes, and orders of the Commission, with respect to notice and hearings, yet the implication is so pregnant of the legislative conception that such specific orders of the Commission must be made only after notice and hearing that it would be doing violence to the legislative plan of supervision by the Commission to construe the act so as to impute a contrary purpose and intent. It was contemplated that provision for notice should be made by statute or rule of the Commission. Special statutory provision was made as to notice of a hearing for joint rates to roads that are not under the management of the same company, and as to the requirement about the location of depots (Civil Code 1910, § 2631), but as to other matters the Legislature left it to the Commission to formulate rules respecting notice and hearing. Although the reference in the clause relating to notice was to the preservation of existing statutes and rules of the Commission, there is no negation that the Commission might not, from time to time, amend or enlarge its rules so as to give other or additional notice. There is nothing in the present record contradicting the existence of a rule of the Commission providing for notice at the time of the passage of the act of 1907, nor is there any contention that the Wadley Southern Railway Company did not in fact have notice of the hearing in the particular case. The defendant pleaded that the law did not provide for a hearing on the facts, and for that reason it violated the constitutional guaranties of due process of law, and the equal protection of the laws. The burden was on the railroad company to sustain its plea by submitting proof of

the absence of any rule of the Commission providing for notice and a hearing. Civil Code, § 2626. It wholly failed in this particular, and we are bound to assume that there was a rule of the Commission as contemplated in the statute.  *  *  * It will be observed that the point raised in the plea is the nonexistence of any rule of the Commission, and not any deficiency of the rule. As the defendant failed to show the nonexistence of any rule of the Commission, or, if there was a rule, that it was faulty in any respect, the latter question cannot arise in this case."

It will be seen that the Supreme Court of Georgia held that it was bound to assume that there was a rule of the Commission as contemplated in the statute, and that the burden was on the railroad company to sustain its plea that it had been deprived of its constitutional guaranty of "due process of law," and consequently to show by proof the absence of any rule of the Commission providing for notice and hearing. The court then held that the railroad company had wholly failed in this particular. We think it must be fairly taken from this decision of the Supreme Court of the state that notice and a hearing are necessary to the validity of any such action of the Commission as was taken in the present case, where it is claimed that the rates to be charged by the railroad company were substantially changed and lessened. In this case the railroad company has assumed the burden of proving the fact and has shown that, neither in the law nor in the rules of the Commission, at the time the orders complained of here were passed, was there any provision requiring notice and hearing.

[2] The able counsel for the Commission has earnestly contended here that this requirement can be gathered from sections 2630, 2633, 2641, and 2653 of the Code of Georgia, being a part of the Railroad Commission Law, particularly section 2633, which provides the method of procedure before the Commission, the examination of witnesses, etc., shall be that ordinarily used and recognized in courts of law. We do not agree that there is anything in any of the sections referred to by counsel which confers such power or requires any such duty of the Commission. The Railroad Commission, in the answer filed by it in this case asserts that no such notice and hearing was necessary to justify the circular determined upon and promulgated by it. The language used in the answer is this:

"It is submitted that notice and a hearing according to judicial methods is not required by the Constitution or by the law of this state or of the United States. The Railroad Commission of Georgia lawfully exercises the police power of the state in the making and regulation of rates, and is vested with legislative and administrative powers adequate to the end in view. It is permitted to make its own investigations according to its own methods. It has been vested with the exclusive power to determine the reasonableness of rates, and the exercise of its discretion in this regard, within constitutional limitations, is not subject to judicial review."

It has been shown on the hearing in this case that soon after the decision by the Supreme Court of the state in the Wadley Southern Case the Commission, as the suggestion of its counsel, adopted an amendment to rule 12 of the Commission's "General Rules," providing for notice of hearing and an opportunity to be heard. This, we think, is strongly suggestive of the fact that the Commission itself recognized that no such rule had previously existed, and that, under

the decision in the case named, such a rule was necessary. The language of this amendment to rule 12 is as follows:

"Both in cases of complaints, and when the Commission initiates action, notice shall be given to the persons or corporations interested in, or affected thereby, ten days before the hearing, except in cases for the fixing of joint rates, when *thirty days' notice* shall be given and shall give to such persons or companies an opportunity to be heard."

[3] As has been stated, the railroad company did have notice by letter addressed to one of its officers, and the question arises, Was notice given to one of its officers, as a matter of favor or consideration on the part of the Commission, sufficient to satisfy the "due process of law" requirement?

The case of Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289, is an interesting authority upon this question, and has been frequently cited. In the course of the opinion, by Earl, J., and in discussing the question of "due process of law," this is said:

"It is not enough that the owners may, by chance, have notice, or that they may, as a matter of favor, have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has, in fact, been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, but by what may, by its authority, be done. The Legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice."

The opinion contains a discussion of the authorities on "due process of law," which it is unnecessary to further consider; the part quoted being sufficient upon the question now under consideration. We think the decision in the Wadley Southern Railway Case fully recognizes this rule.

In the case of Security Trust Co. v. Lexington, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204, it is said on the subject of due process of law:

"If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is whether any notice is provided for by the statute" (citing Stuart v. Palmer, supra).

In Central of Ga. Ry. Co. v. Wright, 207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463, the Supreme Court of the United States restated the rule laid down in Security Trust Co. v. Lexington in the following language:

"Before an assessment of taxes could be made upon omitted property, notice to the taxpayer, with an opportunity to be heard, was essential, and that somewhere during the process of the assessment the taxpayer must have an opportunity to be heard, and that this notice must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace."

In the first Minnesota rate case (Chicago, etc., Railway Co. v. Minnesota, 134 U. S. 418, 457, 10 Sup. Ct. 462, 466 [33 L. Ed. 970]), the Supreme Court says this:

"It deprives the company of its right to a judicial investigation, by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a Railroad Commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice.

"Under section 8 of the statute, which the Supreme Court of Minnesota says is the only one which relates to the matter of the fixing by the Commission of general schedules of rates, and which section, it says, fully and exclusively provides for that subject, and is complete in itself, all that the Commission is required to do is, on the filing with it by a railroad company of copies of its schedules of charges, to 'find' that any part thereof is in any respect unequal or unreasonable, and then it is authorized and directed to compel the company to change the same and adopt such charge as the Commission 'shall declare to be equal and reasonable,' and, to that end, it is required to inform the company in writing in what respect its charges are unequal and unreasonable. No hearing is provided for, no summons or notice to the company before the Commission has found what it is to find and declared what it is to declare, no opportunity provided for the company to introduce witnesses before the Commission, in fact, nothing which has the semblance of due process of law; and although, in the present case, it appears that, prior to the decision of the Commission, the company appeared before it by its agent, and the Commission investigated the rates charged by the company for transporting milk, yet it does not appear what the character of the investigation was, or how the result was arrived at."

In Roller v. Holly, 176 U. S. 398, 409, 20 Sup. Ct. 414, 44 L. Ed. 520, in the opinion by Mr. Justice Brown, this expression is used:

"The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion."

We think it clear that there must have been something in the law, and certainly in the rules of the Commission, requiring notice and hearing to constitute due process of law. That there was nothing to this effect in the law or in the rules, at the time this circular was promulgated, we think has been established here.

[4] Counsel for complainant contend earnestly that the provision for notice and hearing must be in the law itself, and that a mere rule of the Commission requiring such notice is not sufficient. We think it unnecessary to pass further upon this question than to say that, in view of the fact that the Supreme Court of the state, in passing upon this matter in the Wadley Southern Railway Case, held that a rule of the Commission would meet the question of due process of law, we are disposed to follow that decision. Notwithstanding this the difficulty remains; for, as stated, the evidence in this case shows that at the time the circular in question was issued, there was no rule of the Commission providing for notice and hearing.

We think, on the whole, the equity of this case is with the complainant, and that it is entitled to an interlocutory order granting the injunction pending the hearing and the final disposition of the case. It has been satisfactorily shown that the rates promulgated by the Railroad Commission in this circular No. 316 were unreasonable and probably confiscatory, in a fair legal sense, at the time the circular was issued.

Ever since the Railroad Commission provided by rule for notice and hearing on questions before it involving rate reductions or adjustments,

it has been within its province to have taken up the question involved in this suit, and to have "mended its hold" so as to have eliminated all question of due process of law; and in recent years, in view of the admitted revival of business and increased earnings in intrastate traffic on the complainant's road and other railroads in Georgia, it would seem that affairs would have been speeded to the advantage of all concerned if the parties had agreed to a rehearing as to the readjustment of rates on the complainant's railroad.

Of course we do not intend by anything that has been said, nor by the injunction herein issued, to interfere in the slightest with the right of the Railroad Commission to take up now or hereafter the question involved in this circular issued in this case and re-examine the matter in the light of existing conditions and make such order about rates as it may deem proper.