PLATTE SAND & GRAVEL COMPANY, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED NOVEMBER 5, 1931. No. 27888.

*Byron Clark, Jesse L. Root, J. W. Weingarten, C. A. Sorensen* and *Hugh La Master,* for appellant.

*Robins & Yost, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This appeal is from an order entered by the state railway commission, directing defendant to refund to plaintiff certain alleged overcharges for freight on 22 car lots of gravel, shipped by plaintiff from its gravel pit in Saunders county to DeBolt Place in Douglas county, over defendant's line of railway to Omaha and thence over the Chicago & Northwestern railway to DeBolt Place. Defendant appeals.

The rate exacted by defendant was 5½ cents per cwt. Defendant contends that this rate was lawfully established by the railway commission as a joint-haul rate for gravel over the two lines of railway, and was in force and effect at the time the shipments in question moved.

Plaintiff contends that the lawful freight rate on gravel from its pit to Omaha was 3 cents per cwt.; that the connecting carrier was entitled to a switching charge of $12 per car from Omaha to DeBolt Place, which charge defendant was required to absorb, and that this rate, and not the joint-haul rate, was the one applicable to the shipments in question.

From the record it appears that at the time of, and many years prior to, the movement of the cars in question, DeBolt Place was designated on the distance charts of the Chicago & Northwestern Railway Company as one of its stations, about seven miles distant from the Omaha station, and that at the time of the shipments here involved DeBolt Place was not within, but was a considerable distance beyond, the limits of the switch-yards of the Chicago & Northwestern Railway Company at Omaha. It appears that the cars in question were transported from Omaha to DeBolt Place by the latter railway company in its regular trains and over its main-line track. The 5½-cent rate on gravel between plaintiff's pit and DeBolt Place by way of Omaha was the regular established rate, at least until the latter road, upon its application, procured from the railway commission an order providing for a $12 switching charge from its station in Omaha to DeBolt Place. This latter order, providing for a switching charge, was made

without notice to the defendant. It also appears that the rate on gravel from plaintiff's gravel pit to Omaha by way of defendant's railway was 3 cents per cwt., and that there was a provision also for absorption of switching charges when the car was destined to an industry on the switches of a connecting carrier at Omaha. That order provided for the absorption of the switching charge, provided that it left the initial carrier $18.50 per car for its freight charge.

The plaintiff's contention is that this 3-cent rate was the one in force and that the defendant company was required to absorb the switching charge made by the connecting carrier. Defendant apparently concedes that, if the order providing for the $12 switching charge is valid and binding upon it, then the 3-cent rate should prevail and the order entered by the railway commission in this case is proper and valid.

The real question for determination, therefore, is: May a through or joint rate over two lines of railway, jointly established and put into effect, pursuant to an order of the railway commission, be modified or abrogated by the establishment of a terminal switching charge which is subject to absorption by the initial carrier, and where such switching charge is established on an *ex parte* application of one of the carriers without notice to the other?

Section 75-408, Comp. St. 1929, authorizes the state railway commission to establish through joint rates for the shipment of freight and cars over two or more connecting lines of railway in this state, and further provides that in the making thereof and in changing or revising the same they shall be governed, as nearly as may be, by the provisions of article IV of said chapter 75, with reference to original schedules of rates and tariffs for railway companies and common carriers. By reference to section 75-402, Comp. St. 1929, we find that the commission is authorized to alter, change, amend or abolish any classification or rate, when deemed necessary, and that such amended, altered or new classifications or rates shall be put into effect in the same manner as the originals, and in so

doing the commission is required to fix a time and place for a hearing and to give the railway company or common carrier, to be affected thereby, ten days' notice thereof. Any railway company or common carrier shall be entitled to be heard at such time and place, to the end that justice shall be done.

Section 75-712, Comp. St. 1929, makes it unlawful for any railway company or common carrier to change any rate, schedule, or classification until application has been made to the railway commission and permission had for that purpose. For a violation, the carrier is subjected to a penalty not exceeding $10,000. Section 75-501 provides for a revision or modification of the rates charged, but only upon a hearing before the commission, with due notice to the common carriers affected. Section 75-505 provides that if the railway company or common carrier, or other person affected by the order made, shall be dissatisfied with the decision made by the commission an appeal may be had to this court to review its action.

If the order of the railway commission, fixing the $12 switching charge via Chicago & Northwestern railway from Omaha to DeBolt Place is valid, and if such switching charge must be absorbed by defendant on gravel shipments from plaintiff's pit to DeBolt Place via Omaha, then it is clear that such an order abrogates and cancels the former joint rate of 5½ cents and establishes a new joint rate of 3 cents per cwt.

In *McCaffrey Bros. Co. v. Chicago, B. & Q. R. Co.*, 114 Neb. 382, it was held: "A freight rate once lawfully established continues to be the legal rate until legally canceled. Subsequent tariffs naming new rates, without canceling previous rates, cannot carry the new rate into lawful effect." To the same effect are *Knight v. Chicago, B. & Q. R. Co.*, 114 Neb. 387, and *Knight v. Chicago, B. & Q. R. Co.*, 114 Neb. 388.

In *Southern Roads Co. v. Galveston, H. & S. A. R. Co.*, 140 I. C. C. 413, it was, in effect, held that, so far as the shipping public is concerned, the effect of requiring the absorption of a switching charge is to establish a joint rate.

In *Chicago, M. & St. P. R. Co. v. State of Minnesota*, 134 U. S. 418, 33 L. Ed. 970, in the body of the opinion it was said (p. 457): "No hearing is provided for, no summons or notice to the company before the commission has found what it is to find and declared what it is to declare, no opportunity provided for the company to introduce witnesses before the commission, in fact, nothing which has the semblance of due process of law."

In *Central of Georgia R. Co. v. Georgia R. Commission*, 215 Fed. 421, it was held: "Notice and hearing are necessary to the validity of an action by the Georgia Railroad Commission, changing a freight classification of a railroad company doing business within the state, so as to reduce its freight rates, under authority conferred by the Georgia Railroad Commission Law." With respect to the manner of making and changing rates, the law of Georgia seems to be quite similar to that of Nebraska. In *Silica Sand Producers' Traffic Ass'n v. Chicago, B. & Q. R. Co.*, 73 I. C. C. 588, it was held, in effect, that a joint rate may not be established, modified or canceled unless all the carrier parties to the joint rate are parties to the proceeding.

As heretofore noted, in the instant case the $12 switching charge from Omaha to DeBolt Place purported to be effective without notice to the defendant. Under the authorities cited, it is apparent that the order of the commission, establishing the $12 switching charge, is not binding upon the defendant. It may be observed that, if the commission could establish a switching charge to a regular station, it might also extend it, not only to the first station, but to the second or third or still farther station, and would thereby abrogate and cancel existing joint rates. But such joint rates may not be canceled or modified except upon a hearing, with notice to all carriers affected thereby.

It follows that the order entered by the commission in this case, directing a refund, is erroneous and is hereby reversed, and plaintiff's complaint dismissed.

REVERSED AND DISMISSED.