IN RE APPLICATION OF UNITED MINERAL PRODUCTS COMPANY.
UNITED MINERAL PRODUCTS COMPANY, APPELLANT, v. NEBRASKA RAILROADS OF WESTERN TRUNK LINES COMMITTEE, APPELLEE.
131 N. W. 2d 388

Filed November 20, 1964. No. 35727.

Nelson, Harding & Acklie and Richard A. Peterson, for appellant.

Mason, Knudsen, Berkheimer & Endacott, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, BOSLAUGH, and BROWER, JJ., and DIERKS, District Judge.

YEAGER, J.

This action, as originally instituted, is one in which United Mineral Products Company, a corporation of Weeping Water, Nebraska, designated in this court as appellant, filed an application with the Nebraska State Railway Commission petitioning it to establish single car, joint line commodity rates on limestone, crushed or ground, from Weeping Water, Nebraska, to all points in

the State of Nebraska, which are 54 cents a ton higher than the single line rates from Ashland, Nebraska, to the same points.

By this application the request is that a new rate shall be fixed from Weeping Water, Nebraska, to all points in the State of Nebraska, except as to three points named later herein, at 54 cents a ton above the single line rate from Ashland, Nebraska, to such points.

In the application it is pointed out that in a previous instance the commission established, and this court approved, a joint line rate for shipments from Weeping Water, Nebraska, which exceeded the single line rate from Ashland, Nebraska, by 54 cents a ton in the case of shipments to three points, namely, Ord, Allen, and Hastings, Nebraska.

The rates to points other than the three named are not declared in the application, but it is inferable that the existing joint line rate to at least some of the points other than the three would exceed the rate established for the three which as has been stated was only 54 cents a ton above the single line rate on single car shipments.

This, the appellant declares, amounts to unjust discrimination and it is on this account it seeks the establishment of rates based on the 54 cent differential over single line rates on shipments of the named products in the state.

In response to the application the Nebraska Railroads of Western Trunk Lines Committee, composed of five railroads named in the protest, designated herein as appellee, filed a protest. By the protest the appellee asked for no relief or for any affirmative action by the commission.

A hearing was had before the commission on the application of the appellant and the protest of the appellee. At this hearing two witnesses testified on behalf of the appellant and two on behalf of the appellee. After the hearing was concluded the commission made findings and

rendered an order in apparent disposition of the controversy.

By finding it is declared that the witnesses for the appellee presented a proposal counter to that of the appellant from the presently existing joint rate which was a reduction from the presently established and existing joint line rate. This proposal was contained in column 19 of exhibit 9, an exhibit offered and received in evidence on behalf of the appellee.

It is stated here that this represented what the witnesses regarded as a fair rate and did not indicate either any rate charges requested by the appellee, or which were being currently charged for this character of service, and neither did it represent a rate charge imposed in anywise by the commission.

In disposition of the case in neither findings nor order was a ruling made on the application of the appellant. The findings and final order granted to the appellee that which was proposed by the witnesses for appellee in column 19 of exhibit 9. The findings and order refer to this as an application made by the appellee. The order declared that the named railroads were "authorized to place in effect on Nebraska intrastate traffic, effective September 4, 1963, subject to an expiration date of December 31, 1963, or until further order of the Commission, rates to apply on highway construction material, filler, consisting of limestone, ground or limestone dust, in closed cars, minimum weight 100,000 pounds, the rates as shown in Column 19 of Exhibit 9 in the subject application which by reference hereto, are made a part hereof."

From this disposition of the action by the Nebraska State Railway Commission the appellant has taken its appeal. As grounds for reversal the brief of appellant contains a number of assignments of error, but before consideration of them, if they require consideration herein, it appears there is a matter of procedure affecting the power of the commission to render valid findings and a

valid order disposing of the case. Although not adverted to by the parties in their presentations it appears to have such controlling significance in determining the validity of the action of the commission that it may not be ignored.

Before proceeding to an examination of this subject it appears well to call attention to section 49-301, R. R. S. 1943, which is as follows: "Whenever a statute shall be repealed, such repeal shall in no manner affect pending actions founded thereon, nor causes of action not in suit that accrued prior to any such repeal, except as may be provided in such repealing statute."

The reason for calling attention to this is that the powers of and functions of the Nebraska State Railway Commission and the rights, powers, and duties of parties subject to control of the commission were defined by laws enacted prior to 1963. The proceeding here was commenced on June 5, 1963, and although many changes were made by the Legislature in 1963, by amendment, repeal, and the enactment of new and additional provisions, the laws in effect at that time are controlling in the action here. The findings and order involved were rendered September 3, 1963. Whatever was done at the 1963 session of the Legislature or later is not of consequence in the determination of the case here.

In this light this opinion proceeds on the assumption that the determination shall respond to the statutes in 1963, rather than to the statutes as changed in 1963. In any event the statutory features in the area of concern prior to and after the actions of the 1963 session of the Legislature insofar as involved here are not materially different.

Section 75-302, R. R. S. 1943, contained the following: "The State Railway Commission shall fix a schedule and classification of rates and charges except joint rates hereinafter provided for, for the transportation of freight, passengers, and cars over any railway or by any common carrier in this state. To that end the commission shall

give the railroad company or common carriers to be affected thereby ten days' notice of the time and place when and where the rates will be fixed. Any such railway company or common carriers shall be entitled to be heard at such time and place to the end that justice may be done, and the commission shall have process to enforce the attendance of witnesses, to be served as in civil cases."

Section 75-306, R. R. S. 1943, contained the following: "It is hereby made the duty of all railway companies doing business in this state to establish reasonable joint through rates for the transportation of freight between points upon their respective lines within this state, and shall receive and transport freight and cars over such route or routes as the shipper shall direct."

By section 75-307, R. R. S. 1943, it was provided that where freight is to be transported between different points within the state to be carried by two or more railway companies operating connecting lines such railway companies shall transport it at reasonable through rates.

Section 75-308, R. R. S. 1943, contained the following: "In the event that railway companies or common carriers, as defined in section 75-301, fail to establish through joint rates, or fail to establish and charge reasonable rates for such shipments, it shall be the duty of the State Railway Commission, either upon their own motion, or upon the application of some person interested, to establish such rates for the shipment of freight and cars over two or more connecting lines of railroad in this state. In the making thereof, and in changing or revising the same, they shall be governed, as nearly as may be, by the provisions of sections 75-302 to 75-307 * * *."

The effect of these provisions in the case here is to say that as to joint line rates, it is the duty of the railway companies to establish on their lines within the state reasonable joint through rates.

If the railway companies fail in their duty to establish

joint rates then it shall be the duty of the commission, on its own motion or on the application of some person interested, to establish such rates for shipment over joint line connecting railroads. This establishment may come about by original fixation or by change and revision.

This right however depends upon compliance with the exactions of section 75-302, R. R. S. 1943, the one which exacts 10 days' notice to railroad companies or common carriers involved.

Section 75-401, R. R. S. 1943, provided that any person in his own behalf or in behalf of a class similarly situated, or any firm, corporation, or association, or any mercantile, agricultural, or manufacturing society, or body politic or municipal organization, or railway company or common carrier, may complain of rates and in such an instance the commission shall give notice and grant a hearing on the complaint and fix a date for hearing. It was also provided that action may be taken on the motion of the commission after giving notice of hearing.

The power to consider a subject matter such as is involved here is statutory and the statutes prescribe the manner in which it shall be exercised. In Platte Sand & Gravel Co. v. Chicago, B. & Q. R. R. Co., 121 Neb. 855, 238 N. W. 766, a case involving the required manner of exercise of the power and the force and effect of a failure so to do, particular consideration was given to sections 75-408 and 75-501, Comp. St. 1929, which are respectively like sections 75-308 and 75-401, R. R. S. 1943.

As already pointed out, section 75-308, R. R. S. 1943, provided for the establishment of joint rates by the commission. This section coupled with section 75-302, R. R. S. 1943, furnished the procedures for the establishment of such rates. Platte Sand & Gravel Co. v. Chicago, B. & Q. R. R. Co., *supra*, declares that the validity of such rates depends upon whether or not there

has been a compliance with the statutory procedures.

In that case it was declared that in case of change the commission was required to give notice and grant a hearing. In the opinion by quotation from McCaffrey Bros. Co. v. Chicago, B. & Q. R. R. Co., 114 Neb. 382, 207 N. W. 503, it was said: " 'A freight rate once lawfully established continues to be the legal rate until legally canceled. Subsequent tariffs naming new rates, without canceling previous rates, cannot carry the new rate into lawful effect.' "

Further in the opinion it is stated: "But such joint rates may not be canceled or modified except upon a hearing, with notice to all carriers affected thereby." See, also, Southern Roads Co. v. Galveston, H. & S. A. Ry. Co., 140 I. C. C. 413; Chicago, M. & St. P. R. Co. v. Minnesota, 134 U. S. 418, 10 S. Ct. 462, 33 L. Ed. 970; Central of Georgia Ry. v. Georgia R.R. Commission, 215 F. 421.

It is true that in this case, as in the cited case, the power and effect of fixing and changing joint line rates is involved, but the provisions of section 75-308, R. R. S. 1943, insofar as notice and hearing are concerned places burden equally in all instances where such a burden is imposed. If therefore there was a failure of the Nebraska State Railway Commission to comply with the statutory exactions to which attention has been called in the establishment of the joint line rate under consideration and on the record here this failure is apparent, then it follows that its findings and order were and are void and of no effect.

It is observable that the appellant did not by its application seek a rate generally to be applied to joint line shipments, but for the establishment of a special quantity rate. The significance of this here is that it aids in an understanding of the character of appellant's application.

The application was for a change in rates for joint line shipments over the State of Nebraska except shipments

to the three named points. That application was in order and there was compliance by the commission with regard to notice and hearing, and there was a hearing. After the hearing the commission made findings and rendered its order, but not with reference to anything contained in that application.

The transcript contains no indication that the commission made any determination upon the application of the appellant. This is true notwithstanding the fact that on the basis of the transcript there was nothing else properly before the commission on which to base a decision. The appellee filed no application of any kind or character whereby it sought establishment, change, or modification of any kind of rates. The same is true of the carriers represented by it.

It is true that the findings indicate that there was an application on the part of appellee, and that the order rendered was based thereon. This however is not true. What the commission actually did was to treat the testimony of a witness for the appellee as an application, and render its order accordingly.

Even if this were to be treated as an application it would not constitute a basis for a change in existing joint line rates or the establishment of new rates. There was no compliance with the statutory requirements for notice and hearing.

The protest to the application of the appellant could not be regarded as an application for establishment or change of rates. It amounted to nothing more than a negative response to the application of the appellant.

There is nothing in the record to indicate that any action was taken in furtherance of action of the commission in the matter of fixing of rates by it on its own motion, and even if this did appear, it does not appear that notice was given and hearing granted as required by statute.

The action of the commission in the establishment of the new joint line rates was not only irregular and

without authority but it was void. In the opinion in Platte Sand & Gravel Co. v. Chicago, B. & Q. R. R. Co., *supra,* it was said: "Section 75-712, Comp. St. 1929, makes it unlawful for any railway company or common carrier to change any rate, schedule, or classification until application has been made to the railway commission and permission had for that purpose. * * * Section 75-501 provides for a revision or modification of the rates charged, but only upon a hearing before the commission, with due notice to the common carriers affected." The substance of the prohibitions contained in this quotation is carried into the statutory provisions referred to herein defining the functions of the commission as related to the action here.

The commission on the record and under the facts and circumstances disclosed was called upon only to make a determination upon the application of the appellant for the establishment or modification of a joint line rate requested. This application was never passed upon. Instead, without application or notice, but solely on the testimony of two witnesses for the appellee, the commission proceeded to establish joint line rates to all points in the State of Nebraska. This establishment of rates was, under the terms of statute and the decisions of this court, clearly void.

This is not to say that the required consideration of the application of the appellant and a determination thereon would have been without legal force and effect, or that the matter is not now subject to consideration in a proper proceeding but only that in this proceeding the appellant is entitled to no substantive relief. Neither party is entitled to substantive relief at the hands of this court.

The order of the Nebraska State Railway Commission is reversed, with each party to pay its own costs. In this light a consideration of the assignments of error in the briefs is not required.

REVERSED.