IN RE APPLICATION NO. 25315 OF THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY AND UNION PACIFIC RAILROAD COMPANY.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLANTS, V. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.
IN RE APPLICATION NO. 25315, SUPPLEMENT NO. 1, OF THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY AND UNION PACIFIC RAILROAD COMPANY.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLANTS, V. NEBRASKA STATE RAILWAY COMMISSION, APPELLEE.

144 N. W. 2d 432

Filed July 15, 1966. Nos. 36174, 36173.

Mason, Knudsen, Berkheimer & Endacott and William P. Higgins, for appellants.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BURKE, District Judge.

CARTER, J.

This is an appeal from two orders of the Nebraska State Railway Commission on two applications by the Chicago, Burlington & Quincy Railroad Company and

the Union Pacific Railroad Company to establish graduated reduced single-line carload freight rates on feed grains from eastern and central Nebraska origins to western Nebraska destinations on the two railroads with the amount of rate reductions based on the weight of the carload shipments. The original application was for an order to establish such rates from eastern and central Nebraska to Henry and Lyman, Nebraska, and intermediate points, on the Burlington and Union Pacific, respectively. The second application was for the purpose of adding Sanborn and Venango, Nebraska, as destination points on the Burlington, and Barton, Nebraska, as a destination point on the Union Pacific. For the purpose of determining the common issue in the two appeals, we shall decide the cases in a single opinion.

The commission approved the reduced rates based on four weight classifications described in the commission's order as follows: "(1) 180,000 pound minimum, moving in shipper owned 'jumbo' covered hopper cars but mileage allowance is not observed; (2) 180,000 pound minimum, moving in carrier owned 'jumbo' covered hopper cars; (3) 145,000 pound minimum per car used; (4) 110,000 pound minimum per car used. These rates will not apply on shipments accorded transit and switching charges will not be absorbed at destination." The rates for the four classifications progressively increased from classification 1 to classification 4, all as applied for by the two applicants.

In entering its order in each of the two applications, the commission inserted on its own initiative the following exception: "Exception-minimum weights shall be as specified herein except that where because of limitations as to maximum gross weight permitted to move over certain portions of a rail branch line, the minimum carload weight shall not be greater than the weight of the grain in a car that can be safely transported over that portion of the rail line." It is the contention of the appealing railroads that this exception compels them to

transport feed grains over branch lines with car-weight limitations with a lesser rate than that applied for, that the exception was ordered without notice and hearing or stipulation of the parties, and that the effect is to establish an arbitrary and unlawful rate as to such branch line operations.

The evidence shows that the Interstate Commerce Commission had previously granted similar reduced rates on feed grains as those applied for between eastern and central Nebraska and eastern Colorado and Wyoming. One basis of the applications was to obtain competitive rates in the Nebraska areas affected with those granted to buyers in eastern Colorado and Wyoming. The evidence also shows that another basis for a reduction of rates in the affected areas in Nebraska was to attempt to recoup freight rates lost to unregulated motor carriers. We think the foregoing evidence sustains the order of the commission in granting the reduced rates in accordance with the applications.

The primary issue is the validity of the exception contained in the commission's orders. It must be conceded that the commission had authority to grant the rate reduction applied for under the evidence adduced, in whole or in part, or subject to restrictions and limitations. The railroads in making the application as here shown have invoked the jurisdiction of the court to this extent.

In the instant case the commission, by including the exception, decreased the freight rates on feed grains on branch lines with load limits beyond the scope of the applications. This had the effect of applying reduced rates on carload shipments below the minimum weight limits which the proposals in the applications requested. Since notice was not given of this proposed rate change by the commission and no hearing thereafter held on the propriety of such a freight rate, the order is prohibited by section 75-119, R. S. Supp., 1965, which provides in part: "Prior to the fixing or changing of any rate,

the commission shall give the common carriers to be affected thereby, ten days' notice of the time and place when and where the rates will be fixed. Such common carriers shall be entitled to be heard at such time and place to the end that justice may be done."

The Attorney General states that the contention of the two railroads is that the commission must either accept or reject proposed rate changes without alteration or limitation. We do not find this to be the contention of the railroads. We understand their contention to be that the applications may be granted in whole or in part, or restricted, or limited, but that they may not be extended beyond the power of the commission invoked by the applications without complying with section 75-119, R. S. Supp., 1965. In the instant case no objectors appeared to resist the grant of the applications. The evidence of possible discrimination in rates between the areas affected and branch lines with gross load limits was injected by the staff attorney of the commission, not by the appealing railroads. While it is true that there was a discrimination as to the charges to be made, this does not necessarily mean that there was an unlawful discrimination. Chicago, B. & Q. R.R. Co. v. Herman Bros. Inc., 164 Neb. 247, 82 N. W. 2d 395; Nebraska Limestone Producers Assn. v. All Nebraska Railroads, 168 Neb. 786, 97 N. W. 2d 331. One purpose in applying for the reduced rates in the instant case was to recoup lost freight charges. It could well be said that the appealing railroads could not compete with unregulated motor vehicles in the areas excluded from their applications because such rates would not be compensatory. Assuming the correctness of such position, the imposing of such rates could well result in loss to the railroads. To impose such a loss without notice, hearing, or a right of appeal, is not consonant with the statute or the rules of due process. Platte Sand & Gravel Co. v. Chicago, B. & Q. R.R. Co., 121 Neb. 855, 238 N. W. 766; United Mineral Products Co. v. Nebraska Railroads, 178 Neb. 640,

134 N. W. 2d 598. The effect of the exception inserted by the commission's own initiative is to reduce freight rates on branch lines having gross load limits under the minimums requested in the railroad companys' applications. This is rate fixing without notice and hearing.

We conclude that the inclusion of the exception by the commission, under the facts of this case, amounts to rate fixing by the commission without notice and hearing required by section 75-119, R. S. Supp., 1965, and is not binding on the appellant railroads. The parts of the orders of the commission designated "exception" are therefore reversed and held for naught.

REVERSED.