# CENTRAL OF GEORGIA RAILWAY COMPANY *v.* WRIGHT, COMPTROLLER-GENERAL OF GEORGIA.
# GEORGIA RAILROAD AND BANKING COMPANY *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

Nos. 85, 89.   Argued October 21, 22, 23, 1907.—Decided November 18, 1907

Due process of law requires that opportunity to be heard as to the validity of the tax and the amount of the assessment be given to a taxpayer, who, without fraudulent intent and in the honest belief that it is not taxable, withholds property from tax returns; and this requirement is not satisfied where the taxpayer is allowed to attack the assessment only for fraud and corruption.

The assessment of a tax is action judicial in its nature requiring for the legal exertion of the power such opportunity to appear as the circumstances of the case require, and this court, as the ultimate arbiter of rights secured by the Federal Constitution, is charged with the duty of determining whether the taxpayer has been afforded due process of law.

The system provided by the Political Code of Georgia, §§ 804, 879, as construed by the highest court of that State, not allowing the taxpayer any opportunity to be heard as to the valuation of property not returned by him and honestly withheld, except as to fraud and corruption, does not afford due process of law, which adjudges upon notice and opportunity to be heard, within the meaning of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

124 Georgia, 596, 630; 125 Georgia, 589, 617, reversed.

THE facts are stated in the opinion.

*Mr. T. M. Cunningham, Jr., Mr. Joseph R. Lamar* and *Mr. Joseph B. Cumming*, with whom *Mr. Henry C. Cunningham, Mr. A. R. Lawton* and *Mr. Alex. C. King* were on the briefs, for plaintiffs in error:

The statutes of the State of Georgia as construed by the Supreme Court of Georgia in the matter of back tax assessments do not provide for either notice or hearing and therefore do not provide due process of law and are contrary to the Fourteenth Amendment of the Constitution of the United States.

The question of due process of law was dealt with by the Supreme Court of Georgia only in the first decision. That opinion greatly simplifies the issue, because there is now no question as to the character of the notice required or the notice given, since the court holds not only that the statutes do not provide for notice, but that the closing of the "door of opportunity" was intentional and the deprivation of the right to be heard was a penalty.

When the Fourteenth Amendment provided that no person shall be deprived of his property without a hearing, it also declared that he should not be deprived of a hearing as a penalty. Whatever the crime, however great the contempt, howsoever contumacious a party, he cannot be deprived of the right to be heard when his property is to be taken. Judgment

of any sort must be after notice. It is contrary to the first principles of the social compact to deprive one of the right to be heard. *Hovey* v. *Elliott,* 167 U. S. 414.

A party, by his misconduct, cannot forfeit a right so that it may be taken from him without judicial proceedings, in which the forfeiture shall be declared in due form. Cooley, Con. Lim. 518; *Chicago &c. R. R.* v. *Chicago,* 166 U. S. 235; *Galpin* v. *Page,* 18 Wall. 350. Where the proceedings are arbitrary, oppressive, or unjust, they are declared not to be "due process of law." *Glidden* v. *Harrington,* 189 U. S. 258.

Under the Fourteenth Amendment, the legislature is bound to provide a method for the assessment and collection of taxes that shall be in conformity with natural justice, *Turpin* v. *Lemon,* 187 U. S. 51, and notice is specially necessary where, as in Georgia, the assessment is equivalent to a judgment *in personam* and binds not merely the particular property assessed for taxation, but all the estate of the taxpayer. Pol. Code, 880–883.

The statute must provide an opportunity to be heard on the charge, whether that charge be an assessment for the current year or a reassessment for previous years. As long as the State can change the assessment, the citizen has a right to be heard on the question as to whether the change shall be made, and as to the amount of the new assessment. *Davidson* v. *New Orleans,* 96 U. S. 105.

The rule is the same whether the reassessment is by a change in the valuation, or by the addition of the property omitted. *Kuntz* v. *Sumption,* 117 Indiana, 1; *Walsh* v. *State,* 142 Indiana, 557; *Cleghorn* v. *Postlewait,* 43 Illinois, 431; *Tolmon* v. *Solomon,* 191 Illinois, 204.

The assessment of back taxes on omitted property involves the determination of value; is judicial in its nature, and notice and a statutory right to be heard in back tax assessments are essential to the due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States. Gray on Limitations of Taxing Power, § 1295, p. 639; 27 Am. & Eng.

Enc. of Law, 705; *The Redwood Case*, 42 N. W. Rep. 713; *Overing* v. *Foote*, 65 N. Y. 269–277; *Douglas* v. *Westchester Co.*, 172 N. Y. 309.

*Mr. John C. Hart*, Attorney General of the State of Georgia, and *Mr. Boykin Wright* for defendant in error:

Due process in matters of taxation means notice of suitable character, and an opportunity to be heard at some stage of the proceedings. *Taylor* v. *Secor (State R. R. Tax Cases*, 111), 92 U. S. 575; *Kentucky Tax Case*, 115 U. S. 321. The notice need not be personal or individual. In fact, the usual and proper notice is statutory and collective. *Pittsburg* v. *Backus*, 154 U. S. 421; Judson on Taxation, §§ 321, 329.

The process of taxation does not require the same kind of notice as is required in a suit at law, or even proceedings for taking private property under the power of eminent domain. It involves no violation of the process of law when it is executed according to the customary forms and established usages, etc. *Bell's Gap &c. Co.* v. *Pennsylvania*, 134 U. S. 232.

Opportunity to be heard at some stage of the proceedings is all that is requisite. It may be either before or after the assessment or at any time before final judgment is entered. *Gallup* v. *Schmidt*, 183 U. S. 300; *Walker* v. *Sauvinet*, 92 U. S. 90; *Davidson* v. *New Orleans*, 96 U. S. 97; *Spencer* v. *Merchant*, 125 U. S. 345; *Pittsburg &c.* v. *Backus*, 154 U. S. 421.

It is no denial of due process to withdraw the opportunity to be heard as a penalty for the taxpayer's failure or refusal to make a proper return of his property to a designated officer, in the manner and at the time required by law. *Glidden* v. *Harrington*, 189 U. S. 255, 259, 260.

The right exists to discriminate in some manner against those who fail to hand in tax lists. When the discrimination consists in merely submitting the party to the doom of the assessor and depriving him of any appeal, it would seem that there could be no valid objection to it. Cooley on Taxation (3d Ed.), 619 to 624 and notes; *Board of Commissioners* v. *Anderson*,

68 Fed. Rep. 341; *Lott* v. *Hubbard,* 44 Alabama, 493; *State* v. *Louisiana,* 19 La. Ann. 474; *Railway Co.* v. *Johnson,* 108 Illinois, 11; *Morris* v. *Jones,* 150 Illinois, 542; *S. C.,* 37 N. E. R. 929; *McMillan* v. *Carter,* 6 Montana, 215; *S. C.,* 9 Pac. Rep. 906; *Valencia County* v. *Railroad Co.,* 3 N. M. 380; *S. C.,* 10 Pac. Rep. 294; *Orena* v. *Sherman,* 61 California, 101; *Tucker* v. *Aiken,* 7 N. H. 113; *Hartford* v. *Champion,* 58 Connecticut, 268; *S. C.,* 20 Atl. Rep. 471; *State* v. *County Commissioner,* 5 Nevada, 317; *McTwiggan* v. *Hunter* (R. I.), 29 L. R. A. 526; *Tripp* v. *Torrey,* 17 R. I. 359; *Grigsby &c.* v. *Freeman* (Va.), 58 L. R. A. 349; *Georgia &c.* v. *Wright,* 124 Georgia, 617 and citations.

MR. JUSTICE DAY delivered the opinion of the court.

These cases are writs of error to the Supreme Court of the State of Georgia, in suits brought to enjoin the collection of certain taxes. In the view we take of them they may be considered together.

Actions were begun by the plaintiffs in error, in the Superior Court of Fulton County, to enjoin the enforcement of executions in the hands of the sheriff, issued for taxes assessed by the comptroller-general on shares of the corporate stock of the Western Railway of Alabama, an Alabama corporation, which stock was alleged to be held and owned by the plaintiffs in error.

The Superior Court refused to award an injunction.

Upon writs of error the Supreme Court affirmed the judgments of the court below. 124 Georgia, 596, 630. The cases were remitted to the Superior Court of Fulton County, and that court rendered final decrees in favor of the defendants below, holding the tax executions to be lawful. The cases were again taken to the Supreme Court of Georgia and there affirmed. 125 Georgia, 589, 617.

The question of the taxability of these shares was a matter of litigation in the Federal courts of the Georgia District, and it was held such shares were not taxable. 116 Fed. Rep. 669

affirmed in the Court of Appeals, 117 Fed. Rep. 1007. The latter case was reversed and the stock held taxable in the case of *Wright* v. *Louisville & Nashville Railroad Company*, decided by this court at the October term, 1904. 195 U. S. 219.

Thereupon says the Supreme Court of Georgia (124 Georgia, 612):

"On January 27, 1905, the comptroller-general wrote to the president of the Georgia Railroad and Banking Company the following letter: 'The Supreme Court of the United States having recently held, as you doubtless are aware, that the shares of stock of the Western Railway of Alabama owned by the Georgia Railroad and Banking Company are taxable in Georgia, it becomes my duty to assess these shares of stock for taxation for each of the years in which they are in default for their taxes. This assessment is required to be made by the comptroller-general from "the best information obtainable." I desire to proceed to the discharge of this duty intelligently, and therefore respectfully request you to furnish me any data in your possession which will enable me to make perfectly fair, just, and legal assessments of this property. From your long connection with the property as president of the Georgia Railroad and Banking Company, and your familiarity with its value, you doubtless are in possession of information which will very greatly aid me in making an equitable assessment of the property. I trust, therefore, you will submit at your earliest possible convenience any facts or suggestions bearing upon this line which you may deem proper. I would be glad to have any data which you may submit with reference to its value for each year, beginning with the year 1883, the year I am informed your corporation became the owner of these shares of stock. I expect to proceed with this matter some time the early part of next week if possible.' Other correspondence took place between the comptroller-general and various officers of the Georgia Railroad, including the general counsel, who eventually submitted to the comptroller-general a statement regarding what he considered the value of the railroad property in ques-

tion, together with a tabulated statement of the dividends which the Georgia Railroad had received from the stock, at the same time protesting that the stock was not liable for taxation, and refusing to make any return of it for that purpose. The comptroller-general thereupon, according to his affidavit, 'assessed the same from the best information obtainable.' It is insisted with great earnestness and ability that the levy of executions under these circumstances, without giving notice to the railroad company or allowing it any opportunity to be heard as to the basis of valuation upon which the assessment was made, amounted to a seizure of its property without due process of law. It is not claimed that the comptroller-general has violated the provisions of any existing statute, but that the laws of Georgia do not provide for the collection of taxes on omitted property after a return has been made by the taxpayer and accepted by the comptroller-general."

The first and perhaps principal question argued in the case arises upon the contention of the plaintiffs in error that the method of assessment provided for the taxation of property in such cases as the present, as laid down in the statutes of the State of Georgia, as construed by the Supreme Court of the State, do not afford the taxpayer due process of law. The pertinent sections of the Political Code of Georgia are copied in the margin.[1]

---

[1] SEC. 804. *Returns to comptroller, how made.*—The returns of all companies, or persons, required to be made to the comptroller-general must be in writing and sworn to, by the presiding officer, etc.

SEC. 805. *Returns and taxes, etc.*—The returns of all railroad and insurance and express companies, and agents of foreign companies, authorized in this State, shall be made to the comptroller-general by the first day of May in each year, and the taxes thereof paid to the state treasurer by the first day of October, and not later than December twentieth of each year.

SEC. 812. *Returns to comptroller must be itemized.*—Whenever corporations, companies, persons, agencies, or institutions, are required by law to make returns of property, or gross receipts, or business, or income, gross, annual, net, or any other kind, or any other return, to the comptroller-general, for taxation, such return shall contain an itemized statement of property, each class or species to be separately named and valued, or an itemized account of gross receipts, or business, or income, as above defined, or other

Of the system of taxation thus provided the Supreme Court of Georgia in a summary of its provisions says (124 Georgia, 613):

"The Political Code, section 812, prescribes the method by which 'corporations, companies, persons, agencies, or institutions,' shall make returns of their property to the comptroller-general for taxation, and provides that 'such returns shall be carefully scrutinized by the comptroller-general, and if in his judgment the property embraced therein is returned below its value, he shall assess the value, within sixty days thereafter, from any information he can obtain, and if he shall find a return of . . . matters required to be returned as aforesaid, below the true amount, or false in any particular, or in anywise contrary to law, he shall correct the same and assess the true amount, from the best information at his command, within sixty days. In all cases of assessment, or of correction of returns, as herein provided, the officer or person making such

matters required to be returned, and in case of net income only, an itemized account of gross receipts and expenditures, to show how the income returned is ascertained, and such returns shall be carefully scrutinized by the comptroller-general, and if in his judgment the property embraced therein is returned below its value, he shall assess the value, within sixty days thereafter, from any information he can obtain, and if he shall find a return of gross receipts, or business, or income, as above defined, or other matters required to be returned as aforesaid, below the true amount, or false in any particular, or in anywise contrary to law, he shall correct the same and assess the true amount, from the best information at his command, within sixty days. In all cases of assessment, or correction of returns, as herein provided, the officers or person making such returns shall receive notice and shall have the privilege, within twenty days after such notice, to refer the question of true value or amount, as the case may be, to arbitrators—one chosen by himself, and one chosen by the comptroller-general—with power to choose an umpire in case of disagreement, and their award shall be final.

SEC. 813. *When no return comptroller to assess.*—In case of failure to make return, the comptroller-general shall make an assessment from the best information he can procure, which assessment shall be conclusive upon said corporations, companies, persons, agencies, or institutions.

SEC. 814. *Collection of tax, how enforced.*—In all cases of default of payment of taxes upon returns or assessment the comptroller-general shall enforce collections in the manner now provided by law.

SEC. 847. *Defaulters to be doubly taxed.*—If a person fails to make a re-

returns shall receive notice and shall have the privilege, within twenty days after such notice, to refer the question of true value or amount, as the case may be, to arbitrators, . . . and their award shall be final.' Section 813 is as follows: 'In cases of failure to make return, the comptroller-general shall make an assessment from the best information he can procure, which assessment shall be conclusive upon said corporations, companies, persons, agencies, or institutions.' By section 814 it is provided that 'in all cases of default of payment of taxes upon returns or assessments, the comptroller-general shall enforce collections in the manner now provided by law.' 'If any corporation, company, person, agency, or institution, who are required to make their returns to the comptroller-general, shall fail to return the taxable property or specifics, or pay annually the taxes for which they are liable to the state treasury, the comptroller-general shall issue against them an execution for the amount of taxes due, according to law, together with the cost and penalties.' Section 874. 'When there is no return

turn, in whole or in part, or fails to affix a value to his property, it is the duty of the receiver to make the valuation and assess the taxation thereon, and in all other respects to make the return for the defaulting person from the best information he can obtain, and having done so, he shall double the tax in the last column of the digest against such defaulters; after having placed the proper market value or specific return in the proper column; and for every year's default the defaulter shall be taxed double until a return is made.

SEC. 855. *Taxes for former years, how returned and collected.*—Receivers and collectors are required to receive the returns and to collect the taxes thereon for former years, when any person is in default, which taxes shall be assessed according to the law in force at the time the default occurred, and shall be so specified in the digest.

SEC. 874. *Defaulting corporations.*—If any corporation, company, person, agency, or institution, who are required to make their returns to the comptroller-general, shall fail to return the taxable property, or specifics, or pay annually the taxes for which they are liable to the state treasury, the comptroller-general shall issue against them an execution for the amount of taxes due, according to law, together with the costs and penalties.

SEC. 879. *When there is no return.*—When there is no return by which to assess the tax, the comptroller-general shall, from the best information he can procure, assess in his discretion.

by which to assess the tax, the comptroller-general shall, from the best information he can procure, assess in his discretion.' Section 879. These sections of the Political Code are thus set out in order that we may have before us at the outset the various statutes bearing on the power of the comptroller-general to collect taxes on property which has not been returned. And at this point we will take occasion to say that in our opinion all considerations of the good faith of the railroad company should be eliminated from this discussion. It may be conceded that the officials of the company honestly believed that this stock was not taxable, and that there has never been on their part the slightest effort to conceal the Georgia Railroad's ownership of it, or to deceive the comptroller-general in any way. In no jurisdiction has the maxim '*Ignorantia legis neminem excusat*' been more rigidly applied than in Georgia. The railroad company was bound to know that this stock was taxable, and its mistaken, though honest, belief to the contrary furnishes no excuse for non-payment."

In view of this statute as thus construed the question made is, whether due process of law is afforded where a taxpayer, without fraudulent intent and upon reasonable grounds, withholds property from tax returns with an honest belief that it is not taxable, and the assessing officer proceeds to assess the omitted property without opportunity to the taxpayer to be heard upon the validity of the tax or the amount of the assessment, either in the tax proceedings or afterward upon a suit to collect taxes, or by independent suit to enjoin their collection.

Considerable discussion was had in the oral argument of the case concerning the effect of the rulings of the Supreme Court of Georgia in construing the sections of the Political Code governing this subject.

A perusal of the opinions delivered in these cases leaves no doubt in our minds that the Supreme Court of Georgia has held the taxing scheme of the State of Georgia, as laid down in its statutes, to be that, while it provides for a method of valuation in case of the return of property for taxation, it does not in-

tend to give to the taxpayer who fails to return property legally liable to be assessed any opportunity to be heard as to the value of the property or the amount of the assessment. But the failure to return places it within the power and duty of the collector to make an assessment final and conclusive upon the taxpayer without hearing, for in its latest utterance upon the subject (124 Georgia, 617), that learned court said:

"The Georgia law affords to every citizen, individual or corporate, ample facilities for the preservation of his rights as against the tax gatherer, always provided that he makes a return to the proper officer of the property that he owns. It presupposes that the taxpayer will disclose to the officer all of his taxable property, and it requires him to know whether his property is taxable or not. The requirement of candor in disclosing the ownership of property is really at the foundation of our tax system. So long as the citizen complies with that requirement, he is afforded every opportunity to dispute with the State the question of the value of his property and the amount of tax to be levied thereon. When he fails to return, in whole or in part, fraudulently or through an honest mistake, he then and there becomes a defaulter, and the door of opportunity is closed to him, so far as the right to have the mutual rights between himself and the taxing power adjusted by arbitration is concerned. In other words, ample 'machinery' is available to the citizen who makes full returns; deprivation of the right to be further heard is one of the penalties visited upon the defaulter. The collecting officer must ascertain as best he can the amount of property to be taxed, as well as its value, and take summary means for its collection. This, it seems to us, is the scheme of taxation contemplated by the laws of this State. Whether or not it is consistent with a wise public policy we do not undertake to determine. That it is not unconstitutional we are fully satisfied."

It would be impossible to reconcile the different holdings in the state courts upon this subject. One class holds that upon the assessment of omitted property the taxpayer has no right

to be heard, having by his failure to return submitted himself to "the doom of the assessor." Another class holds that in such cases there must be an opportunity to be heard before the taxpayer can be thus assessed, and that to deny him such right as a penalty for failure to return is a denial of due process of law secured to the taxpayer by many state constitutions as well as the Fourteenth Amendment of the Constitution of the United States.

Of course, this court, as the ultimate arbiter of rights secured by the Federal Constitution, is charged with the duty of determining this question for itself.

Former adjudications in this court have settled the law to be that the assessment of a tax is action judicial in its nature, requiring for the legal exertion of the power such opportunity to appear and be heard as the circumstances of the case require. *Davidson* v. *New Orleans*, 96 U. S. 97; *Weyerhauser* v. *Minnesota*, 176 U. S. 550; *Hager* v. *Reclamation District*, 111 U. S. 701.

In the late case of *Security Trust & Safety Vault Company* v. *The City of Lexington*, 203 U. S. 323, decided at the last term of this court, the subject underwent consideration, and it was there held that before an assessment of taxes could be made upon omitted property notice to the taxpayer with an opportunity to be heard was essential, and that somewhere during the process of the assessment the taxpayer must have an opportunity to be heard, and that this notice must be provided as an essential part of the statutory provision and not awarded as a mere matter of favor or grace. In that case it was further held that where the procedure in the state court gave the taxpayer an opportunity to be heard upon the value of his property and extent of the tax in a proceeding to enjoin its collection the requirement of due process of law was satisfied.

Applying the principles thus settled to the statutory law of Georgia, as construed by its highest court, does the system provide due process of law for the taxpayer in contesting the validity of taxes assessed under its requirements?

Under the scheme provided for, if the property is withheld

from return, the comptroller, without notice or opportunity for hearing, must proceed to value the property, and his valuation is final and conclusive, unless the taxpayer can show—a very unlikely contingency—that the taxing officer has acted in bad faith in making the assessment. Against the assessment thus made there is no relief in the courts of the State upon proceedings brought to collect the taxes or by bill to enjoin their collection. The penalty of failure to return, no matter how honest or well grounded the taxpayer may have been in his belief that the property was not subject to taxation, compels him to submit to the final and conclusive assessment made by the taxing officer.

It may be conceded that under the provisions of § 855 the duty to return property omitted in former years is a continuing one, and that under § 812 of the Political Code upon such return the system of arbitration of value may be open to the taxpayer, but if for good reason the taxpayer contests the taxability of his property and does not return it the door of opportunity is closed upon him.

As in the present case, courts may differ as to the taxable character of the property, but the taxpayer must concede its taxability, or be forever concluded by a determination of its value judicial in its nature (*Hager* v. *Reclamation District*, 111 U. S. 701, 710) in a proceeding where he has no legal right to a hearing.

But it is contended that plaintiffs in error had an opportunity to be heard, and were in fact heard, upon the question of the value of their property upon an issue made by an amendment to the answer in the Superior Court, after the case went back from the Supreme Court, tendering an issue and asking the court to pass upon the value of the property.

Upon this subject we think the decision of the Supreme Court does not leave in doubt the effect of such hearing upon this issue. For it is said (125 Georgia, 605):

"As to those years in which the plaintiff had an opportunity to return its property for taxation and failed to do so, and for

which the property has been assessed by the comptroller-general, whether the property has been excessively assessed cannot now be inquired into. Under the former ruling in this case it is concluded by the failure to return the property at the time required by law, and must bear the burden of the assessment made in conformity to law. There was neither averment nor proof that the assessment was the result of fraud or corruption on the part of the comptroller-general. If there had been, a different question would have been presented."

And further in the same opinion (125 Georgia, 616):

"The plaintiffs contend that the valuation placed by the comptroller-general upon the stock was excessive. The defendant contended that, as the plaintiff was a defaulter, the valuation of the comptroller-general was conclusive under the law. In an amendment to the answer the defendant alleged that the valuation placed upon the stock by the plaintiff was not its true market value, 'but on the contrary the true market value is as assessed by the comptroller-general,' and concluded the amendment with a prayer 'that the court may so find and decree.' The plaintiff objected to the allowance of this amendment on the ground that the court was without jurisdiction to assess or re-value the same for the purpose of taxation, and that the prayer was vague and indefinite. The court ruled that it could not in this case decide or fix the value of the stock for the purpose of determining the amount for which the execution should proceed, but that it would hear evidence with a view of determining whether the assessment was excessive, and refused to strike the prayer. Evidence was heard in reference to the method adopted by the comptroller-general in reaching the valuation placed by him upon the stock, and there was a finding, in the final decree, that the valuation was not excessive. As has been said, there was evidence justifying this finding of fact. Under the circumstances, even if there was any error in refusing to strike the prayer of the amendment to the answer, the error was not of such a character as to require a reversal of the judgment."

That is to say, the Supreme Court had already decided that the taxpayer being in default of return was not entitled to be heard upon the valuation of his property, except for the purpose of attacking the assessment for "fraud or corruption" in the assessing officer, and the testimony did not show such excessive valuation as within the rule laid down in both decisions would avoid the action of the comptroller-general.

The record discloses that for many years this class of property was not regarded as taxable in Georgia, and was not returned for taxation in the State. But it is contended that the taxpayer here stands in the attitude of one acting contumaciously, and denying the validity of the tax after this court had practically decided its validity against the plaintiffs in error in *Wright* v. *Railroad Co.*, 195 U. S. 219. But, as we have seen, the Supreme Court of Georgia has expressly eliminated the element of bad faith in the taxpayer from the findings upon which its decision rests. The *Wright case* was held not to have concluded the contention that plaintiffs were denied the equal protection of the laws, in that no other person or corporation in Georgia was assessed upon stock in a foreign corporation, nor the validity of the claim that the stock was not held in Georgia, nor other grounds alleged in the petitions, except so far as the Georgia Railroad was concerned for the year 1900. 124 Georgia, 607. We must decide the case in view of its relations to a taxpayer not fraudulently concealing his property and honestly contending, with reasonable grounds for the contention, that it is not taxable under the laws of the State.

As we have seen, the system provided in Georgia by the statutes of the State as construed by its highest court requires of the taxpayer that he return all his property, whether its liability is fairly contestable or not, upon pain of an *ex parte* valuation, against which there is no relief in the tax proceedings or in the courts, except in those cases where fraud or corruption can be shown in the action of the assessing officer.

Reluctant as we are to interfere with the enforcement of

the tax laws of a State, we are constrained to the conclusion that this system does not afford that due process of law which adjudges upon notice and opportunity to be heard, which it was the intention of the Fourteenth Amendment to protect against impairment by state action.

*The judgments of the Supreme Court of Georgia are reversed and the cases remanded for further proceedings not inconsistent with this opinion.*