THE STOUT LUMBER COMPANY *v.* PARKER.

4-5242 122 S. W. 2d 180

Opinion delivered November 14, 1938.

*M. P. Morton, Jr.,* and *S. F. Morton,* for appellant.

*Compere & Compere,* for appellee.

GRIFFIN SMITH, C. J. The Stout Lumber Company sold certain lands in Calhoun county, retaining varying interests in the mineral rights. The tax assessor extended assessments against such mineral rights, the taxes amounting in the aggregate to $892.14. Over objections of the Lumber Company assessments were made, al-

though the company furnished the assessor a list of descriptions.

M. P. Morton, manager of appellant company's land department, testified that shortly after April 10, 1936, he received a letter from the assessor regarding the property; that other letters followed, and that there were personal contacts. October 23, 1936, the descriptive lists were sent in, but they were not acted upon at the assessor's office until the Board of Equalization had adjourned.

Appellant contends there was no authority October 23rd to make the assessments; that inclosed with the descriptive lists was its letter disavowing an intent to assess; that from April until October 23rd the assessor took no action, although deeds were a matter of record in the county; that when notified of the assessments there was no opportunity to be heard thereon; that in fact appellant did not know what had been done until the collector supplied a list of the Company's taxes, in the spring of 1937.

Suit was brought to restrain the collector from returning the property delinquent in 1937 under the assessments of 1936; to enjoin the county clerk from advertising such delinquencies, and to restrain the collector from selling the mineral rights. The chancellor refused to issue the orders, and the Lumber Company has appealed.

Appellant contends (1) that the manner of assessing the property is violative of art. 2, § 8, of the Constitution of Arkansas, and that it violates the due process clause, Fourteenth Amendment to the Federal Constitution. (2) That the assessments violate art. 16, § 5, of the State Constitution. (3) That the court erred in refusing to hear testimony offered by appellant to show that the mineral rights had no actual value at the time assessed.

Section 13666 of Pope's Digest, with respect to property omitted from the assessment rolls for any cause, makes it the duty of the assessor to prepare a special list or assessment thereof and file the same with the county clerk, if such omission is discovered before the collector closes his books for collection of taxes for the year in

which such property was due to have been assessed, and the county clerk "shall thereupon place the same upon the tax books and extend the taxes and penalty thereon for the year."

Appellant contends it was the duty of the assessor to complete his rolls between the tenth of April and the third Monday in August as to all real and personal property not assessed by or on behalf of the owner between the first Monday in January and the tenth of April; that having failed in this duty, the assessor could not make the assessments at a period so advanced in the assessment calendar as to automatically deprive a taxpayer of his right to be heard with respect to valuations or contested ownership.

Although appellant, in its brief, insists that the assessor was availed of facilities of the public records to make the assessments, without requiring that descriptive lists be supplied, the witness Morton, in testifying to conversations had with members of the Equalization Board, said: "There had been no assessments made [October 23rd]. I knew the assessor could not do it. There wasn't any way in the world for him to do it unless I gave him the lists. . . . I could have refused to furnish them and [the assessments] would never have gone on the books."

From this testimony it seems that appellant thought that by withholding the lists it could circumvent assessments; but Morton, having in the course of his correspondence with the assessor promised to supply the lists, eventually did so; but at a time and in circumstances apparently sufficient to prevent taxation for the current year.

Attention is directed to *Central of Georgia Railroad Company* v. *Wright*, 207 U. S. 127, 28 S. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463, where the Supreme Court of the United States, in rejecting the construction placed upon a Georgia tax statute, said: "The system provided in Georgia by the statutes of the state as construed by its highest court requires of the taxpayer that he return all his property, whether its liability is fairly contestable

or not, upon pain of an *ex parte* valuation against which there is no relief in the tax proceedings or in the courts except in those cases where fraud or corruption can be shown in the action of the assessing officers. . . . We feel constrained to the conclusion that this system does not afford that due process of law which adjudges upon notice and opportunity to be heard which it was the intention of the Fourteenth Amendment to protect against impairment by state action.''

It is not necessary in the instant case to decide whether the assessment statute, if invoked in the manner complained of by appellant, would be violative of the Fourteenth Amendment and other constitutional provisions to which attention is called. It is our view that appellant was not deprived of its day in court. True it is that the assessment was not made until after October 23rd; but efforts were being constantly exerted by the assessor to secure co-operation. Appellant, no doubt honestly, took the position that the interests were not assessable. Yet, during the entire period of correspondence, Morton was informed that the Board of Equalization entertained a different view. Under the law the mineral rights, if severed from the fee, should have been declared, even though appellant regarded them as of no value. Section 13652, Pope's Digest.

Although denying that he went before the Equalization Board to discuss the assessment of mineral rights, Morton said:

''Q. Did you discuss the matter with the Board? A. Yes, sir—with the distinct understanding they were not in session. I had written the Equalization Board, asking for an opportunity to present another matter. In my remarks on this matter to the members of the Board I made it very clear to them that I wasn't talking to them as a Board, but as individuals. Q. Then, as I get it, while the Equalization Board was in session, and while you were with them to present another matter, you did discuss with them at that time the question of the assessment of these mineral interests. A. That is true. . . . I knew the members of the Board and thought I could

talk to them as individuals. . . . The discussion with the members was while the Board was in session. . . . There had been no assessment made at that time."

In its brief appellant says: "Again, it appears from the evidence that no assessment was made against the undivided interests in mineral rights owned by appellant where they amounted to less than 50 per cent. In fact, no *bona fide* effort was made to assess these small interests, no matter by whom held. If the 50 per cent. undivided interest owned by the Stout Lumber Company was worth 25c per acre, lesser interests owned by them and other people were worth something. They should have been assessed in the same proportion that they bore to the value of the fee."

In his letter of September 11 to the assessor, Morton said: "I find that the work of getting up a list of our mineral holdings in Calhoun county is much bigger than I anticipated, and it will be some time yet before I can furnish you with the list. . . . There are some tracts of land in which our mineral interest is negligible. We own as low as one-sixteenth in some lands. In some we own one-eighth, and in some, fifteen per cent. I do not believe you want me to furnish you a list of these small fractional interests."

Appellant is in no position to complain that the fractional interests were not assessed, and to urge that for this reason there is lack of uniformity; nor was there a lack of uniformity within constitutional meaning.

There was no allegation in the complaint, or in either of the amendments, that the assessment statute contravened the due process clause of the Federal Constitution.

Appellant assumes that, because the Equalization Board had finally adjourned when the assessments were made, its right of redress was gone. This is not correct. There was the right, by certiorari from the circuit court directed to the county clerk, to have the record brought up for review and correction. Section 2865, Pope's Digest.

Affirmed.