WICKES ASSET MANAGEMENT, INC.

v.

Neil DUPUIS, in His Capacity as
Tax Assessor of the Town of
Lincoln, Rhode Island.

No. 94–82–Appeal.

Supreme Court of Rhode Island.

June 21, 1996.

James P. Marusak, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This matter is before the court on appeal by the plaintiff, Wickes Asset Management, Inc. (Wickes), and on cross-appeal by the defendant, Neil Dupuis, in his capacity as tax assessor of the town of Lincoln (tax assessor or Lincoln), from a Superior Court judgment in respect to seven consolidated tax-abatement cases challenging allegedly excessive tax assessments of Wickes's property by Lincoln. For the reasons stated below, we sustain the appeal of Wickes in part and deny it in part; we sustain the appeal of Lincoln and remand the case to the Superior Court. The following facts are gleaned from the trial justice's decision and other portions of the extensive record in the case, which encompasses approximately 2,000 pages of testimony.

The property at issue is located at 400 Higginson Avenue in the town of Lincoln and consists of a 29.5–acre parcel of land, which was improved by a 481,000–square–foot structure. The structure consists of approximately 443,272 square feet of manufacturing space and 36,000 square feet of office space. Wickes Companies, Inc., a parent company of Wickes, is a Delaware corporation which originally acquired the property, known as the Collyer Wire facility, in 1985. As of May 1987 the property was held by Wickes Foundation, a nonprofit entity. In December 1987 Wickes purchased the property from the Wickes Foundation for $6.3 million. By November 1988 the Collyer Wire facility had ceased its wire-manufacturing operations, and in January 1989 the property was placed on the market for sale.

In May 1987 Wickes filed the first of seven tax-abatement petitions in the Superior Court, seeking judicial review of Lincoln's assessments for the years 1985 through 1991[1] on the basis that its property was

Mark A. Pogue, Providence, and George M. Prescott, Lincoln, for Plaintiff.

1. The Superior Court case numbers and the precise corresponding dates of assessment and tax years are as follows: (1) PC 87–2103, December 31, 1985, July 1, 1986; (2) PC 87–4753, December 31, 1986, July 1, 1987; (3) PC 89–1204, December 31, 1987, July 1, 1988; (4) PC 89–

overassessed. The property was assessed at $7,419,490 as of December 31 during the years 1981 through 1985 and was assessed at $7,373,490 as of December 31 during the years 1986 through 1991.

The cases were consolidated and tried before a Superior Court justice sitting without intervention of a jury. In the first part of a bifurcated trial, the parties addressed the issue of compliance with the statutory requirements of G.L.1956 § 44–5–15 and other threshold issues. In the second part of the trial, the parties presented evidence regarding the value of the property during the seven-year period at issue.

Following the first part of the trial, the trial justice rendered a bench decision in which she found that Wickes had failed to comply with the account-filing requirements of § 44–5–15. The trial justice specifically rejected Wickes's contention that Lincoln had failed to give proper notice to taxpayers as stautorily required and its contention that it had substantially complied with the statute. Moreover, she rejected Wickes's constitutional challenge of the statute.

The trial justice concluded that Wickes was barred from challenging the assessments under § 44–5–26(a) by demonstrating that the assessments exceeded the value of the property because the Superior Court lacked subject-matter jurisdiction as a consequence of Wickes's failure to file annual accounts. However, the trial justice permitted Wickes to present "evidence [in the second phase of the trial] which relates to the fact that the [assessments are] so excessive as to amount to an illegal tax" pursuant to § 44–5–26(b) in regard to all seven actions.

Additionally, in respect to case Nos. PC 87–4753, PC 89–5493, and PC 92–1671, for the tax-assessment dates of December 31, 1986, December 31, 1988, and December 31, 1991, respectively, the trial justice later ruled that she would permit Wickes to invoke the equity jurisdiction of the court pursuant to § 44–5–27. For those cases the trial justice was of the opinion that Wickes had filed the actions timely as provided for in § 44–5–27.

After hearing extensive evidence in respect to the second phase of the trial, which addressed the legality of the tax assessments, the trial justice rendered a written decision in which she concluded that Wickes had failed to demonstrate that the tax assessments for the years 1985 through 1989 were illegal. In reaching this conclusion, the trial justice thoroughly and meticulously evaluated the numerous appraisals obtained by the parties and determined that "the appraisals relied upon by Wickes [did] not support a finding [of] palpably excessive assessments which amount to illegal taxation." In fact she determined that Wickes had not proven that it was overassessed during these years. Moreover, she determined that Wickes was not entitled to any relief in equity for the December 31, 1986, and the December 31, 1988 dates of assessment because Wickes had not presented reliable evidence which demonstrated that the property was overassessed.

In respect to the 1990 assessment, the trial justice found that the "overassessment was the direct result of the closing of the [Collyer Wire facility by Wickes, which] allowed the building to deteriorate and through no action on the part of the tax assessor." She therefore determined that Wickes had failed to meet its burden of proving the assessment was illegal and concluded that it was not entitled to relief for the 1990 assessment.

Finally, in respect to the assessment dated December 31, 1991, the trial justice opined that sufficient grounds existed upon which to invoke the court's equity jurisdiction pursuant to § 44–5–27. She premised this determination upon Lincoln's delay in conducting its townwide property revaluation for 1991. The trial justice accepted Wickes's argument that the December 31, 1991 assessment would have been lower than the assessment which was subsequently issued two years later, on December 31, 1993, if Lincoln had conducted its revaluation at the time it should have. The trial justice concluded that the equities of the case entitled Wickes to a

5493, December 31, 1988, July 1, 1989; (5) PC 91–7766, December 31, 1989, July 1, 1990; (6) PC 92–1692, December 31, 1990, July 1, 1991;

and (7) PC 92–1671, December 31, 1991, July 1, 1992.

new tax assessment notwithstanding Wickes's failure to file an account for that year. The trial justice found that the property had a fair-market value which was lower than the value assessed by Lincoln. She determined that the total assessed value of Wickes's property, including the structure and the land, was $5,376,280 as of December 31, 1991. This sum was $1,997,210 less than Lincoln's assessment. Judgment subsequently entered from which both parties have appealed.

 We begin our analysis of the instant appeals with a reiteration of the established principles of appellate review. "[T]he standard of review of the findings of a trial justice sitting without the intervention of a jury is extremely deferential." *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill et al,* 652 A.2d 440, 443 (R.I.1994). "[The] resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence, are entitled to the same deference." *Warwick Musical Theatre, Inc. v. State,* 525 A.2d 905, 909–10 (R.I.1987). We shall not disturb the findings of the trial justice on appeal unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong. *Clark–Fitzpatrick,* 652 A.2d at 443 (citing *Cerilli v. Newport Offshore Ltd.,* 612 A.2d 35 (R.I.1992)). With these principles firmly in mind, we turn first to the numerous issues raised by Wickes's appeal and then to the claim of error alleged by Lincoln.

Wickes raises numerous arguments in respect to the rulings made by the trial justice relating to the account-filing law, § 44–5–15. At the outset Wickes contends that the trial justice erred in determining that its failure to comply with § 44–5–15 deprived the Superior Court of subject-matter jurisdiction. Wickes alleges further that as a result of the trial justice's conclusion that it had failed to comply with § 44–5–15, it was required to satisfy a higher burden of proof in obtaining relief from the assessments under § 44–5–26(b), as opposed to the lower burden of proof required under § 44–5–26(a). Wickes argues that it substantially complied with § 44–5–15 by filing documents with the tax assessor which were the functional equivalent of an accounting, even though it did not specifically file annual accounts. Moreover, Wickes asserts that even if it did not substantially comply with the statute, Lincoln waived this affirmative defense by failing to assert timely such defense in its pleadings. Wickes also contends that the trial justice erred in rejecting its argument that § 44–5–15 is unconstitutional both on due–process and equal–protection grounds.

 As an initial matter we first address Wickes's contention that the trial justice erred in finding that it had failed to comply with § 44–5–15. The trial justice rejected Wickes's argument that it had filed the functional equivalent of an account and concluded that "[t]here is no such thing as substantial compliance in the statute." Wickes asserts that it filed the functional equivalent of an accounting by virtue of numerous letters and statements it forwarded to the Lincoln Board of Tax Assessment Review (the board) during the years 1986 through 1992. The documents, although not sent within the strict filing deadlines delineated in the statute, essentially protested Lincoln's assessment values and, according to Wickes, "conveyed everything that a formal account was supposed to convey." As a result, Wickes argues, Lincoln unquestionably understood that it was Wickes's position that the assessments were excessive. Consequently Wickes argues that it satisfied the requirements of the statute; hence the trial justice should have permitted it to proceed under § 44–5–26(a).

We are persuaded that the trial justice properly determined that Wickes's actions did not satisfy the requirements of the account-filing law, which provides in pertinent part as follows:

"**44–5–15. Notice of assessor's meeting—Notice by taxpayer of intent to bring in account.**—Before assessing any valuations, the assessor shall cause printed notices of the time and place of their meeting to be posted * * *. The notices shall require every person and body corporate liable to taxation to bring in to the assessors at such time as they may prescribe a true and exact account of all the ratable estate owned or possessed by that person or body, describing and specifying the val-

ue of every parcel of the real and personal estate, together with such additional information as may be prescribed by the assessors relative to the ratable estate * * *. [I]n case any person or body corporate shall fail to file any intention [to file an account], that person or that body shall be deemed to have waived that person's or that body's right to file the account."

Section 44–5–16 further addresses the account-filing requirement and provides in relevant part as follows:

"**Oath to account brought in—Remedies after failure to bring in account.—** (a) Every person bringing in any account shall make oath before some notary public or other person authorized to administer oaths * * * that the account by that person exhibited contains * * * a true and full account and valuation of all the ratable estate owned or possessed by him or her; and whoever neglects or refuses to bring in the account, if overtaxed, shall have no remedy therefor, except as provided in §§ 44–4–14, 44–4–15, 44–5–26 to 44–5–31, inclusive, and 44–9–19 to 44–9–24, inclusive."

We are of the opinion that the documents Wickes forwarded to the board are inadequate as a matter of law to satisfy the requirements contained within the statutory framework. We note that none of the documents sent by Wickes to the board contains an oath before a notary public indicating that it is "a true and exact account" and valuation of any of the ratable estate owned or possessed by Wickes. Wickes also failed to file timely the documents with the tax assessor as accounts within the prescribed time limits. Moreover, the documents were sent to the board, instead of to the tax assessor. These facts support the trial justice's conclusion that Wickes did not meet the statutory requirements of filing annual accounts.

■ Having found that Wickes did not comply with § 44–5–15, we next turn to Wickes's argument that the trial justice erroneously concluded that its failure to comply with the statute divested the Superior Court of subject–matter jurisdiction. Wickes appropriately cites to *Chase v. Bouchard,* 671 A.2d 794 (R.I.1996), and *Rock Ridge Limited*

*v. Assessor of Taxes of Woonsocket,* 667 A.2d 778 (R.I.1995), as supporting the proposition that the failure to file an account does not deprive the Superior Court of subject–matter jurisdiction.

In *Rock Ridge* we unequivocally held that a taxpayer's failure to file an account did not and could not deprive the Superior Court of subject–matter jurisdiction to consider the statutory exceptions to the requirement of filing an account, nor would such failure preclude the Superior Court from considering the case on the merits. *Rock Ridge,* 667 A.2d at 780. This court further determined in *Rock Ridge* that the filing of an account was a condition precedent to allowing the taxpayer to seek relief by means of a petition for assessment of damages. *Id.* Like any condition precedent, it must be pleaded and presented to the trial justice prior to trial and in accordance with Rule 9(c) of the Superior Court Rules of Civil Procedure. *Chase,* 671 A.2d at 796.

In *Chase* we further indicated that a city's failure to plead the defense of failure to file an account or to raise the issue before the trial justice constitutes a waiver of this ground for dismissal of an action. *Chase,* 671 A.2d at 796–97 (city's failure to raise question of requirement of filing an account held to constitute waiver of defense). *See also McKee v. Bouchard,* 674 A.2d 378 (R.I.1996).

In the present case the trial justice erroneously concluded that the court lacked subject-matter jurisdiction as a consequence of Wickes's failure to comply with § 44–5–15. Because we have determined that the failure to file an account prior to trial does not deprive the Superior Court of subject-matter jurisdiction, we remand this case to the Superior Court in order for the trial justice to consider whether Lincoln timely pleaded the defense of failure to file an account in accordance with Rule 9(c). If, after having conducted such an evaluation, the trial justice concludes that Lincoln did not timely raise Wickes's failure to comply with § 44–5–15, thereby waiving the defense, the trial justice is instructed to hear the petitions for relief from the assessments in accordance with § 44–5–26(a) in regard to all seven actions.

Wickes also contends on appeal that §§ 44–5–15 and 44–5–26 as applied by Lincoln are unconstitutional on due-process grounds because a taxpayer who fails to file an account is prohibited from seeking judicial review of a disputed assessment and because the statutes do not bear a rational relationship to a legitimate state interest. Moreover, Wickes alleges that Lincoln's application of the statutes denies equal protection of the law because Lincoln selectively enforces the account-filing law only against taxpayers who seek to challenge its assessments in court.

In the Superior Court the trial justice rejected Wickes's constitutional challenge of the statutes on both grounds. She specifically determined that the statutes are related to a legitimate governmental interest, and she therefore concluded that Wickes had not demonstrated a due–process violation. In respect to Wickes's equal–protection argument, she opined that there was no violation because all taxpayers are treated the same under the statutes. In this vein the trial justice stated that "there's enforcement against every taxpayer when the rolls are certified [by the tax assessor] and the door is closed to all of them."

In support of its due-process argument on appeal, Wickes relies on *Central of Georgia Railway Co. v. Wright*, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134 (1907). Wickes argues that the Supreme Court's holding in *Central* requires the conclusion that Lincoln's application of §§ 44–5–15 and 44–5–26 are unconstitutional. In that case the United States Supreme Court construed a Georgia statute which denied taxpayers who failed to identify real property on an account the opportunity to be heard upon the validity of the tax assessment or the amount of the assessment, either in the tax proceedings or afterward upon a suit to collect taxes or by independent suit to enjoin their collection. The Supreme Court found that the Georgia statute did not provide due process of law for the taxpayer in contesting the validity of taxes assessed under its statutes. 207 U.S. at 141–42, 28 S.Ct. at 53, 52 L.Ed. at 143.

The trial justice in the instant case did not articulate whether she considered Wickes's contention that §§ 44–5–15 and 44–5–26 deny due process of law as precluding a judicial challenge of tax assessments by the taxpayer who fails to file an account. Therefore, on remand to the Superior Court we direct the trial justice to consider the due-process implications, if any, which *Central* has on §§ 44–5–15 and 44–5–26.

■ The next issue in Wickes's appeal addresses whether the trial justice erred in finding that it was not entitled to seek equitable relief for the tax-assessment dates of December 31, 1985, December 31, 1987, December 31, 1989, and December 31, 1990. Wickes contends that the limitations period contained in § 44–5–27 should have been tolled because it conflicts with the limitations period contained in § 44–5–26. Wickes asserts that because the board frequently delayed issuing its decision on its administrative appeals, it could not satisfy the filing deadline in § 44–5–27 without "violating" the provisions of § 44–5–26.

The limitations period contained in § 44–5–26 provides that a person aggrieved by a tax assessment file an appeal with the local tax assessor "within three (3) months after the last day appointed for the payment without penalty of the tax, or the first installment thereof, if the tax be payable in installments," and a person may file an appeal in the Superior Court "within thirty (30) days after a final decision of any local administrative appeal where such person has appealed timely the assessment to the local authority." Pursuant to § 44–5–27, a person "may invoke the equity jurisdiction of the superior court provided that the complaint is filed within three (3) months after the last day appointed for the payment without penalty of the tax, or the first installment thereof, if the tax be payable in installments."

Wickes's argument that the review procedures available within the statutory framework are confusing and contradictory is untenable. The fact that the board was delayed in rendering its decisions on Wickes's administrative appeals had absolutely no effect on its ability to file a complaint seeking equitable relief from the assessments under § 44–5–27. The provision in § 44–5–26 which permits a person to file

a complaint after the local tax administrator renders his or her decision does not operate to preclude a taxpayer from filing a complaint for equitable relief in the Superior Court pursuant to § 44–5–27 at a time prior to the local administrator's rendering his or her final decision. *See Ferland Corp. v. Bouchard,* 626 A.2d 210, 217 (R.I.1993); *Northgate Associates v. Shorey,* 541 A.2d 1192, 1193 (R.I.1988).

The General Assembly has made clear the prerequisite that a person seeking equitable relief under § 44–5–27 file its complaint "within three (3) months after the last day appointed for the payment without penalty of the tax, or the first installment thereof, if the tax be payable in installments." In the instant case Wickes did not comply with this prerequisite in challenging the assessments for the tax dates at issue. The first of the tax installments Wickes owed Lincoln was due on July 31 of each tax year; hence, in order to toll the limitations period in § 44–5–27, Wickes was required to file its complaints, if at all, by October 31 of each tax year. Consequently we affirm the trial justice's determination that Wickes failed to toll the limitations period under § 44–5–27 in respect to the tax-assessment dates of December 31, 1985, December 31, 1987, December 31, 1989, and December 31, 1990.

■ Wickes next argues that the trial justice erroneously ruled that a tax assessor may establish a base-year-property value and then "carry over" that figure from one year to the next without regard to the changes in the condition of the property or in market conditions. It is Wickes's contention that Lincoln's practice of carrying over the 1981 base-year valuation of its property failed to account for the substantial deterioration to the Collyer Wire facility following its closing in 1988 and the fact that the fair-market value of large industrial buildings declined rapidly during the period 1988 through 1991.

In this state revaluations for real property need only be conducted once every decade. *See* G.L.1956 §§ 44–5–11 and 44–5–12. There is no provision under the statutory scheme which would require interim revaluations of real property resulting from changes to property conditions or fluctuating market circumstances. The Legislature has seen fit only to require revaluations by municipalities on a decennial basis. Given the tremendous expense imposed upon municipalities in performing revaluations, we are of the opinion that the existing practice of conducting revaluations on a decennial basis is reasonable. As one court aptly stated "[A]s a practical matter, assessors cannot be expected to revalue every year, even though changes which affect property values may occur within a given year." *Uniroyal, Inc. v. Board of Tax Review of Middlebury,* 182 Conn. 619, 629–30, 438 A.2d 782, 787 (1981) (quoting *Kays, Inc. v. Board of Tax Review of New Haven,* 170 Conn. 477, 480, 365 A.2d 1207, 1208–09 (1976)).

Under our present statutory scheme, however, the Legislature has provided interim remedies for a person aggrieved by an annual tax assessment. Those remedies lie in §§ 44–5–26 and 44–5–27. Consequently a property owner disputing an assessment carried over from a prior year is not precluded from challenging the assessment and is therefore not necessarily "locked into" that value until the next decennial revaluation, as Wickes suggests. We therefore affirm the trial justice's determination that a tax assessor may carry over the same fair-market-value finding from one tax-assessment date to the next until it is required to conduct its decennial revaluation.

■ In its next assignment of error on appeal, Wickes asserts that the trial justice erred in excluding evidence it presented concerning attempts it made to sell the property following the closing of the Collyer Wire facility in 1988. The evidence proffered by Wickes tended to show that it was unable to attract a buyer willing to pay $2.5 million for the property at the auction and that following the auction Wickes was willing to sell the property for the lower price of $1 million. Wickes maintained that this evidence had significant probative value because it showed that the assessed value far exceeded the price a willing buyer would pay for the property and that, therefore, such evidence demonstrated that the property was palpably overassessed.

As an initial matter we note that the trial justice in the instant case did not totally exclude the auction evidence, as Wickes alleges. Indeed the record reflects that the trial justice permitted Wickes to present much evidence in respect to the attempts it made to market the property following the closing of the Collyer Wire facility. We are persuaded that the ruling by the trial justice suggests that she deemed the evidence insignificant in respect to determining the fair-market value of the property. The trial justice specifically stated that she considered the auction evidence presented by Wickes "speculative and self-serving." She therefore accorded the evidence no weight as it related to Wickes's assertion of illegal taxation and its request for equitable relief.

We are of the opinion that in rejecting this evidence, the trial justice acted well within the bounds of her discretion. *See L'Etoile v. Director of Public Works of Rhode Island,* 89 R.I. 394, 153 A.2d 173 (1959) (evidence of offers to purchase property held inadmissible). The trial justice did not overlook or misconceive material evidence, nor was she otherwise clearly wrong. Accordingly, we reject Wickes's claim of error in respect to this evidentiary ruling.

Wickes also argues on appeal that the basis upon which the trial justice denied it relief from the December 31, 1990 tax-assessment date was erroneous. In her decision the trial justice reasoned as follows in respect to the December 31, 1990 tax-assessment date:

"As of December 31, 1990 the facility had been closed for two years and had suffered significant deterioration during this period. *The Court recognizes this loss in value is attributable to neglect and waste on the part of [Wickes].* However, the court finds this deterioration to adversely affect the market value of the property for assessment years 1990 and 1991. However again, this diminution in value, standing alone does not rise to the level of illegal taxation and does not amount to constructive fraud upon the taxpayer. * * * A mistake in valuation or an overassessment does not amount to illegal taxation.

"*Where, as here, the loss in value results in mere overassessment due to extrinsic forces beyond the control of the Lincoln Tax Assessor it cannot result in illegal taxation. This overassessment was the direct result of the closing of the plant by the taxpayer who allowed the building to deteriorate and through no action on the part of the tax assessor.* The taxpayer had an adequate remedy by which to seek review of the assessment. The failure of the taxpayer to file an account is fatal to its claim for the 1990 assessment.

"[The December 31, 1990 tax] assessment is not a case available to the taxpayer to invoke the Court's equity jurisdiction. The Court therefore declines to calculate fair market value for the parcel for 1990 because such finding is irrelevant to this proceeding. Thus for 1990 [Wickes] has not met its burden of proving the assessment was illegal [pursuant to 44–5–26(b) ] and is entitled to no relief." (Emphasis added.)

It is Wickes's contention that the trial justice erroneously factored fault into the determination of whether the property was overassessed. Wickes argues that the concept of fault is irrelevant to the determination of whether property is accurately assessed. We agree.

▮ In assessing the value of property, the tax assessor has as his or her function to assess all property liable to taxation at its full and fair cash value. General Laws 1956 § 44–5–12. Section 44–5–12 gives a substantial basis of uniformity to the tax-assessment scheme in that all property is rated in the same nondiscriminatory manner. *See Allen v. Bonded Municipal Corp.,* 62 R.I. 101, 4 A.2d 249 (1938). There is nothing in the statute which directs the tax assessor in determining fair-market value to ascertain the particular reasons why a property has a certain value. Therefore, we are of the opinion that a property owner's degree of fault with respect to the deteriorating condition of taxable property is beyond the scope of the tax assessor's inquiry.

▮ Similarly it is for this reason we are persuaded that it is improper for a trial

justice presiding over a tax-abatement proceeding to consider the cause of deterioration of a property's condition in reviewing the propriety of a tax assessment. Whether a property owner is responsible for committing neglect and/or allowing waste which causes or contributes to the decline in the condition of taxable property is irrelevant in the tax-assessment analysis and should not be weighed. Accordingly on remand we direct the trial justice to consider Wickes's petition for relief from the December 31,1990 tax-assessment date without regard to Wickes's degree of fault in regard to the deteriorating condition of the property.

■■■ The remaining issues presented for our consideration pertain to the trial justice's rulings in respect to Wickes's claims of equitable relief pursuant to § 44–5–27 for the tax-assessment dates of December 31, 1988, and December 31, 1991. In this tenor Wickes asserts that the trial justice erred in finding that it was not entitled to any equitable relief for the December 31, 1988 tax-assessment date. Wickes also maintains that the trial justice erred in calculating the value of its property as of the December 31, 1991 tax-assessment date after having determined that it was entitled to equitable relief.

Lincoln counters that Wickes has not presented proper cases in which to invoke the equity jurisdiction of the court for either the December 31, 1988, or the December 31, 1991 tax-assessment dates. Lincoln asserts that because Wickes had an adequate remedy at law, it was entirely precluded from seeking equitable relief pursuant to § 44–5–27.

■■■ These arguments require us to examine the enabling statute, § 44–5–27, which provides as follows:

"**Exclusiveness of remedy of petition.**—*The remedy provided in § 44–5–26 shall be exclusive if the taxpayer owned or possessed any ratable estate at all, except that in a proper case the taxpayer may invoke the equity jurisdiction of the superior court* provided that the complaint is filed within three (3) months after the last day appointed for the payment without penalty of the tax, or the first installment

thereof, if the tax be payable in installments. A taxpayer alleging an illegal or void tax assessment against him or her shall be confined to the remedies provided by § 44–5–26." (Emphasis added.)

This section provides that the remedies delineated in § 44–5–26 shall be the exclusive remedies except that in a "proper case" a taxpayer may invoke the equity jurisdiction of the Superior Court. Although this court has never offered a precise interpretation of what constitutes a proper case in which a taxpayer may obtain equitable relief within the meaning of the statute, it is fundamental that if the law affords a remedy and that remedy is adequate, the cause may not be made the basis of a suit in equity. In other words, this court has adhered to the rule that equity will not intervene in circumstances in which there is an adequate remedy at law. *Marran v. West Warwick School Committee,* 113 R.I. 42, 317 A.2d 455 (1974). Consequently we are persuaded that one seeking to invoke the equity jurisdiction of the Superior Court in a tax-abatement proceeding pursuant to § 44–5–27 must demonstrate that he or she has no remedy at law or none that is adequate.

In each of the matters before us Wickes had an adequate legal remedy under § 44–5–26(b), which it pursued in the Superior Court for all seven actions. We are of the opinion that it was error for the trial justice to have permitted Wickes to proceed in equity under § 44–5–27 since it had an adequate statutory remedy under the provisions of § 44–5–26(b). Consequently we sustain Lincoln's appeal and conclude that the relief afforded by § 44–5–26(b) was the exclusive remedy available to Wickes for all seven tax-abatement petitions. The judgment reducing Wickes's assessment for the December 31, 1991 tax date is therefore vacated.

In summary the appeal of Wickes is sustained in part and denied in part. We remand this case to the Superior Court in order for the trial justice to determine whether Lincoln properly raised the defense of failure to file an account in accordance with Rule 9(c). If the trial justice determines that Lincoln failed to plead the defense properly, thereby waiving it, the trial

justice is instructed to hear the petitions under the provisions of § 44–5–26(a). The trial justice is further instructed to consider Wickes's constitutional challenge of §§ 44–5–15 and 44–5–26 in light of the United States Supreme Court's decision in *Central.* In respect to the December 31, 1990 tax-assessment date, the trial justice is directed to reconsider Wickes's petition for relief under § 44–5–26(b) without regard to Wickes's degree of fault in regard to the deteriorating condition of the property. Because we have determined that the trial justice improperly invoked the equity jurisdiction of the Superior Court, Lincoln's appeal is sustained, and the judgment reducing Wickes's assessment for the December 31, 1991 tax date is vacated.